FILED
CLERK, U.S. DISTRICT COURT

MAR 2 3 2010

CENTRAL DISTRICT OF CALIFORNIA
BY_____ DEPUTY

1  ELLEN M. MAHAN, Deputy Chief
   Environmental Enforcement Section
2  AMY R. GILLESPIE
   Email: amy.gillespie@usdoj.gov
3  North Carolina Bar Number: 20511
   Telephone: (202) 616-8754
4  Fax: (202) 514-2583
   Environmental Enforcement Section
5  Environment and Natural Resources Division          JS-6
   U.S. Department of Justice
6  P.O. Box 7611
   Washington, DC 20044-7611
7

8  (Additional attorneys continued on next page)

9
              UNITED STATES DISTRICT COURT
10            CENTRAL DISTRICT OF CALIFORNIA
                  WESTERN DIVISION
11  _____

12  UNITED STATES OF AMERICA, THE   )
    CALIFORNIA DEPARTMENT OF        )
13  TOXIC SUBSTANCES CONTROL, THE   )
    CALIFORNIA HAZARDOUS            )    Case No. CV09-8719
14  SUBSTANCE ACCOUNT, THE          )    GAS (CWx)
    CALIFORNIA HAZARDOUS WASTE      )    MRP
15  CONTROL ACCOUNT, THE            )
    CALIFORNIA TOXIC SUBSTANCES     )
16  CONTROL ACCOUNT, AND THE        )
    CALIFORNIA SITE REMEDIATION     )
17  ACCOUNT,                        )    NINTH PARTIAL
                                    )    CONSENT DECREE
18           Plaintiffs,            )
                                    )
19              v.                  )
                                    )
20  AMERON INTERNATIONAL            )
    CORPORATION, B & C PLATING      )
21  COMPANY, CALIFORNIA DAIRIES,    )
    INC., CASEX CO., ENERGY         )
22  PRODUCTION & SALES CO.,         )
    HALLIBURTON ENERGY SERVICES,    )
23  INC., INTERNATIONAL EXTRUSION   )
    CORPORATION, JAYBEE             )
24  MANUFACTURING CORPORATION,      )
    LUXFER, INC., PRINCESS          )
25  CRUISES LIMITED, THOMPSON       )
    DRILLING COMPANY, AND YRC,      )
26  INC.,                           )
                                    )
27  Defendants                      )
    _____)
28

1   NANCY J. MARVEL
    THOMAS BUTLER
2   Email: butler.thomas@epa.gov
    California Bar Number: 228722
3   Telephone: (415) 972-3869
    Fax: (415) 947-3570
4   United States Environmental Protection
    Agency, Region IX
5   75 Hawthorne Street
    San Francisco, California 94105

6

7   EDMUND G. BROWN, JR.
    Attorney General of the State of California
8   J. MATTHEW RODRIQUEZ, Chief Assistant Attorney General
    KEN ALEX, Assistant Attorney General
9   TIMOTHY R. PATTERSON, Supervising Deputy Attorney
    General
10  DENNIS A. RAGEN, Deputy Attorney General
    Email: dennis.ragen@doj.ca.gov
11  California Bar Number: 106468
    Telephone: (619) 645-2016
12  Fax: (619) 645-2012
    California Department of Justice
13  110 West A Street, Suite 1100
    San Diego, California  92101

14

15  Attorneys for Plaintiffs United States of America and
    the California Department of Toxic Substance Control
16  and State Accounts

17

18

19

20

21

22

23

24

25

26

27

28

# Operating Industries, Inc. (OII) Superfund Site

## NINTH PARTIAL CONSENT DECREE

### TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | Jurisdiction | 6 |
| II. | Parties Bound | 7 |
| III. | Denial of Liability | 8 |
| IV. | Site Background | 9 |
| V. | Definitions | 14 |
| VI. | General Provisions | 28 |
| VII. | Retention of Records | 28 |
| VIII. | Payment of Response Costs | 31 |
| IX. | Priority of Claims | 33 |
| X. | Stipulated Penalties | 34 |
| XI. | Certifications by Each Defendant | 37 |
| XII. | De Minimis Covenants Not to Sue by the United States for the Cash-1 and the Cash-1/R Defendants ("Tier 1" Covenants) | 38 |
| XIII. | De Minimis Covenants Not to Sue by the United States for the Cash-2 and the Cash-2/R Defendants ("Tier 2" Covenants) | 39 |
| XIV. | Covenants Not to Sue by the United States for Matters Addressed in the First and Third Decrees | 43 |
| XV. | Covenants by the State of California | 47 |
| XVI | Covenant Conditions | 57 |
| XVII. | Reservation of Rights | 58 |
| XVIII. | Covenants by Defendants | 63 |
| XIX. | Certification of Completion | 67 |
| XX. | Form of Notice | 68 |
| XXI. | Contribution Protection | 69 |
| XXII. | The Defendants' Right of Contribution and Indemnity and Covenant Not to Sue Each Other | 71 |

1

1  XXIII.    Waiver of Claim-splitting Defense  . . . .  72

2  XXIV.     Lodging and Public Participation . . . . .  72

3  XXV.      Other Claims . . . . . . . . . . . . . . .  73

4  XXVI.     Continuing Jurisdiction  . . . . . . . .  74

5  XXVII.    Integration/Appendices . . . . . . . . .  74

6  XXVIII.   Representative Authority. . . . . . . . .  74

7  XXIX.     Effective Date . . . . . . . . . . . . .  75

8  XXX.      Severability . . . . . . . . . . . . . .  75

9  XXXI.     Termination and Satisfaction . . . . . .  75

10 XXXII.    Section Headings . . . . . . . . . . . .  76

11 XXXIII.   Counterparts . . . . . . . . . . . . . .  77

12 XXXIV.    Final Judgment . . . . . . . . . . . . .  77

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NINTH PARTIAL CONSENT DECREE

WHEREAS, the United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"); the State of California on behalf of the Department of Toxic Substances Control (the "State"); the California Hazardous Substance Account, the California Hazardous Waste Control Account, the California Toxic Substances Control Account, the California Site Remediation Account, and any predecessors and successors to those accounts (collectively the "State Accounts"), to the extent that funds have been or will be expended from those accounts on behalf of DTSC (collectively the "Plaintiffs"), have filed concurrently with this Ninth Partial Consent Decree ("Consent Decree" or "Ninth Partial Consent Decree") a complaint in this matter pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601 et seq. ("CERCLA") and the Solid Waste Disposal Act, 42 U.S.C. §§ 6901 et seq. (also known as the Resource Conservation and Recovery Act). The complaint includes supplemental claims by the State pursuant to the Hazardous Substances Account Act, Health and Safety Code § 25300 et seq., and California Civil Code § 3494. The complaint seeks to compel the Defendants (as defined herein) to perform certain response actions and to recover from the Defendants certain response costs that have been and will be incurred by the United

3

1  States and the State in response to alleged releases

2  and threatened releases of hazardous substances from

3  the facility known as the Operating Industries, Inc.

4  site ("OII Site" or the "Site") located at 900 Potrero

5  Grande Drive, Monterey Park, California;

6      WHEREAS, the Plaintiffs allege that the Operating

7  Industries, Inc. landfill is a facility as defined in

8  Section 101(9) of CERCLA, 42 U.S.C. § 9601(9);

9      WHEREAS, the Plaintiffs allege that the Defendants

10  are persons, as defined in Section 101(21) of CERCLA,

11  42 U.S.C. § 9601(21);

12     WHEREAS, the Plaintiffs allege that wastes, and

13  constituents thereof, generated by the Defendants and

14  sent to and disposed of at the Site, or arranged or

15  accepted by the Defendants for transport and disposed

16  of at the Site, are "hazardous substances," as defined

17  in Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), and

18  California Health and Safety Code §§ 25316 and 25317;

19     WHEREAS, the Plaintiffs allege that the past,

20  present, and potential migrations of hazardous

21  substances from the Site constitute actual and

22  threatened releases, as defined in Section 101(22) of

23  CERCLA, 42 U.S.C. § 9601(22), and California Health and

24  Safety Code §§ 25320 and 25321, and further allege that

25  the Defendants are liable under Section 107(a) of

26  CERCLA, 42 U.S.C. § 9607(a), and California Health and

27  Safety Code § 25360;

28

4

1   WHEREAS, EPA has notified the State of California
2   pursuant to the requirements of Section 106(a) of
3   CERCLA, 42 U.S.C. § 9606(a), and EPA has provided the
4   State with an opportunity to participate in and to be a
5   party to this settlement;

6   WHEREAS, pursuant to Sections 121 and 122 of
7   CERCLA, 42 U.S.C. §§ 9621 and 9622, the Plaintiffs and
8   the Defendants have each stipulated and agreed to the
9   making and entry of this Ninth Partial Consent Decree
10  prior to the taking of any testimony, and in full
11  settlement of the claims raised in the complaint;

12  WHEREAS, the Regional Administrator of EPA Region
13  IX, or his/her delegatee, has determined the following,
14  for the purposes of CERCLA Section 122(g), 42 U.S.C.
15  § 9622(g):   (1) prompt settlement with each Defendant
16  is practicable and in the public interest within the
17  meaning of Section 122(g)(1) of CERCLA, 42 U.S.C.
18  § 9622(g)(1);  (2) the payment to be made by each
19  Defendant under this Consent Decree involves only a
20  minor portion of the response costs at the OII Site
21  within the meaning of Section 122(g)(1) of CERCLA, 42
22  U.S.C. § 9622(g)(1), based upon EPA's estimate that the
23  total response costs incurred and to be incurred at or
24  in connection with the OII Site by the EPA Hazardous
25  Substance Superfund and by private parties will exceed
26  $600,000,000;  (3) the amount of hazardous substances
27  contributed to the OII Site by each Defendant and the
28  toxic or other hazardous effects of the hazardous

5

1 │ substances contributed to the Site by each Defendant
2 │ are minimal in comparison to other hazardous substances
3 │ at the Site within the meaning of Section 122(g)(1)(A)
4 │ of CERCLA, 42 U.S.C. § 9622(g)(1)(A), because the
5 │ amount of materials containing hazardous substances
6 │ contributed to the Site by each Defendant, as shown on
7 │ Appendix B, attached, does not exceed five (5) million
8 │ gallons, and the hazardous substances contributed by
9 │ each Defendant to the OII Site are not significantly
10 │ more toxic or of significantly greater hazardous effect
11 │ than other hazardous substances at the OII Site; and

WHEREAS, the Parties recognize, and the Court by
entering this Consent Decree finds, that the Parties
enter into this Consent Decree in good faith, in an
effort to avoid expensive and protracted litigation,
without any admission or finding of liability or fault
as to any allegation or matter, and that this Consent
Decree is fair, reasonable, and in the public interest;

**NOW THEREFORE, it is ORDERED, ADJUDGED, AND DECREED
as follows:**

**I.        Jurisdiction**

The Court has jurisdiction over the subject matter
of this action and the signatories to this Consent
Decree pursuant to 28 U.S.C. §§ 1331 and 1345, and
Sections 106, 107, and 113(b) of CERCLA, 42 U.S.C.
§ 9606, 9607, and 9613(b), and supplemental
jurisdiction over the claims arising under the laws of
California pursuant to 28 U.S.C. § 1367.  Solely for

6

1 | the purposes of this Consent Decree and the underlying
2 | complaint, each Defendant waives service of summons and
3 | agrees to submit to the jurisdiction of this Court and
4 | to venue in this District. The Defendants shall not
5 | challenge the Court's jurisdiction to enter and enforce
6 | this Consent Decree. The Defendants agree not to
7 | challenge or object to entry of this Consent Decree by
8 | the Court unless the United States has notified the
9 | Defendants in writing that it no longer supports entry
10 | of this Consent Decree or that it seeks to modify this
11 | Consent Decree.

12 | II.          **Parties Bound**

13 |     A.    The Parties to this Consent Decree are the
14 | United States of America, the State, the State
15 | Accounts, and the Defendants.

16 |     B.    This Consent Decree applies to and is binding
17 | upon the United States, the State, and the State
18 | Accounts, and upon the Defendants and the Defendants'
19 | agents, successors and assigns, and upon all
20 | Contractors or other persons acting under or for the
21 | Defendants. Any change in ownership, partnership
22 | status or corporate status of a Defendant including,
23 | but not limited to, any transfer of assets or real or
24 | personal property, shall in no way alter such
25 | Defendant's responsibilities under this Consent Decree.
26 | Each Defendant shall be responsible and shall remain
27 | responsible for carrying out all activities required of
28 | that Defendant under this Consent Decree. All actions

1  taken by the State pursuant to this Consent Decree,
2  including, but not limited to, all approvals,
3  reservations of rights, and covenants not to sue, are
4  solely those of the California Department of Toxic
5  Substances Control ("DTSC") and of no other State
6  agency except that the California Attorney General also
7  covenants not to sue the Defendants as provided in
8  Section XV (Covenants by the State of California, page
9  41).

10  III.                 **Denial of Liability**

11         The Defendants deny any and all legal or
12  equitable liability under any federal, state, or local
13  statute, regulation or ordinance, or under common law,
14  for any response costs, damages or claims caused by or
15  arising out of conditions at or arising from the Site.
16  By entering into this Consent Decree, or by taking any
17  action in accordance with it, the Defendants do not
18  admit any allegations contained herein or in the
19  complaint, nor do the Defendants admit liability for
20  any purpose or admit any issues of law or fact or any
21  responsibility for the alleged release or threat of
22  release of any hazardous substance into the
23  environment.  Nothing in this Section shall alter the
24  Defendants' agreement not to challenge the Court's
25  jurisdiction as set forth in Section I (Jurisdiction,
26  page 6).

27
28

8

IV.                    **Site Background**

The following is a summary of the Site background as alleged by the United States and the State which, for the purposes of this Consent Decree, the Defendants neither admit nor deny:

A.    The Operating Industries, Inc. landfill is a 190 acre facility located at 900 Potrero Grande Drive, Monterey Park, California.  The Site operated from 1948 through 1984.  Over the course of its operation, the landfill accepted industrial solid, liquid and hazardous wastes, as well as municipal solid waste. Wastes accepted by the landfill include hazardous substances as defined in Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), and California Health and Safety Code §§ 25316 and 25317.

B.    The Site is located on the southwestern flank of the La Merced Hills (also called the Montebello Hills) and is divided by California Highway 60 (Pomona Freeway), which runs roughly east-west through the Site, dividing it into a 45 acre North Parcel and 145 acre South Parcel.  The Site is located at the boundary between the San Gabriel groundwater basin to the north and the Los Angeles Central groundwater basin to the south.  The important water-bearing units underlying the Los Angeles and San Gabriel Basins, as well as the Site, are from oldest to youngest:  upper Pliocene Pico Formation; lower Pleistocene San Pedro Formation; upper Pleistocene older alluvium (including "terrace

9

1  gravels"); and the Recent Alluvium.  The San Pedro

2  Formation contains the five major aquifers of the Los

3  Angeles Central Basin and the San Gabriel Basin:  the

4  Jackson, Hollydale, Lynwood, Silverado and Sunnyside

5  aquifers.  The lower Pliocene Repetto formation and

6  older formations are found at depths greater than 1500

7  feet.  The Site is approximately one mile west of the

8  Whittier Narrows groundwater recharge area and the Rio

9  Hondo River.

10      C.   The Site was proposed for inclusion on the

11  National Priorities List ("NPL") in October 1984 and

12  was subsequently placed on the NPL in May 1986, in

13  accordance with Section 105(a)(8) of CERCLA, 42 U.S.C.

14  § 9605(a)(8), as set forth at 40 C.F.R. Part 300,

15  Appendix B.

16      D.   The contaminants found at the Site include

17  hazardous substances as defined by Section 101(14) of

18  CERCLA, 42 U.S.C. § 9601(14), or California Health and

19  Safety Code §§ 25316 and 25317.

20      E.   There have been releases of hazardous

21  substances from the Site, and the Site poses numerous

22  threats to human health and the environment.  The

23  population in proximity to the Site includes the nearby

24  residents of the City of Montebello and the City of

25  Monterey Park, those who travel on the section of the

26  Pomona Freeway that transects the Site, and workers in

27  the several businesses located on or near the Site.

28      F.   In response to a release or a substantial

10

1  threat of a release of hazardous substances at or from
2  the Site, EPA has completed the Remedial Investigation
3  ("RI"), the Feasibility Study ("FS"), the Proposed
4  Plan, and the Final Record of Decision (the "Final
5  ROD") for the Site, pursuant to 40 C.F.R. § 300.430.

6      G.   EPA has identified four operable units to date:
7  Site Control and Monitoring ("SCM"); Leachate
8  Management ("LM"); Gas Migration Control and Landfill
9  Cover ("Gas Control and Cover"); and Final Remedy
10  ("Final Remedy Operable Unit"), this last of which
11  incorporates perimeter liquids control, natural
12  attenuation of contaminated groundwater, and long-term
13  operation and maintenance.   The first two operable
14  units (SCM and LM) were the subject of two interim
15  Records of Decision ("RODs").   The work required by
16  those interim RODs was the subject of two prior
17  settlements, memorialized in two partial consent
18  decrees.   The first settlement is captioned   <u>United</u>
19  <u>States et al. v. Chevron Chemical Company, et al</u>., No.
20  CV 88-7196-MRP(Kx), and was entered by the Court on May
21  11, 1989 (the "First Decree").   The second settlement
22  is captioned  <u>United States, et al. v. American</u>
23  <u>Petrofina Exploration Co., et al</u>., No. CV
24  88-7196-MRP(Kx), and was entered on September 17, 1991
25  (the "Second Decree").

26      H.   A third partial consent decree, captioned
27  <u>United States, et al. v. Chevron Chemical Company, et</u>
28  <u>al.</u>, No. CV 91-6520-MRP(Kx), was entered by the court

1  on March 30, 1992 (the "Third Decree").  The Third
2  Decree addresses a portion of the work required by the
3  Record of Decision for the Gas Control and Cover
4  Operable Unit (the "Gas Control and Cover ROD").  The
5  Gas Control and Cover ROD, unlike the previous two
6  interim RODs, is a final ROD and represents a
7  significant portion of the final remedy for the Site.
8  Parties to the Third Decree are performing a major
9  portion of the Gas Control and Cover ROD and some
10 operation and maintenance as provided in that ROD.  At
11 the termination of the Third Decree, additional
12 operation and maintenance provided in that ROD will be
13 performed under the eighth partial consent decree,
14 described more fully in Paragraph P, below.

15      I.   On December 21, 1992, EPA, the State and the
16 United States Department of the Navy ("Navy") entered
17 into an Administrative Settlement (EPA CERCLA Docket
18 No. 92-19), under which the Navy resolved its liability
19 for matters addressed in the First Decree and the Third
20 Decree.

21      J.   On November 2, 1993, EPA issued a unilateral
22 administrative order ("UAO 94-01") pursuant to Section
23 106 of CERCLA, 42 U.S.C. § 9606, requiring certain
24 response activities at the Site in cooperation with EPA
25 and the other persons performing work at the Site.

26      K.   A fourth partial consent decree, resolving the
27 alleged liability of certain municipalities and
28 transporters and the California Department of

12

1  Transportation for arranging for disposal or for

2  transport for disposal of municipal solid waste, was

3  entered on April 4, 1995, captioned  United States, et

4  al. v. City of Monterey Park, et al ., No. CV 94-8685

5  WMB(GHKx) (the "Fourth Decree").

6      L.   A fifth partial consent decree, addressing the

7  same subject matter as the First Decree and the Third

8  Decree, incorporating new defendants, including the

9  recipients of UAO 94-01, was entered on July 10, 1996,

10  captioned United States, et al. v. IT Corporation, et

11  al., No. CV 96-1959 WMB(JRx) (the "Fifth Decree").

12      M.   On March 7, 1997, EPA issued a unilateral

13  administrative order ("UAO 97-02") pursuant to Section

14  106 of CERCLA, 42 U.S.C. § 9606, requiring certain

15  response activities at the Site in cooperation with EPA

16  and the other persons performing work at the Site.

17      N.   A sixth partial consent decree, captioned

18  United States et al. v. Air Products and Chemicals,

19  Inc., et al., Action No. CV 97-5440 MRP, resolving the

20  liability of certain operator defendants, was entered

21  on September 23, 1997 (the "Sixth Decree").

22      O.   A seventh partial consent decree, captioned

23  United States et al. v. Operating Industries, Inc., et

24  al., Action No. CV00-08794 SVW, resolving the liability

25  of certain owner/operator defendants and incorporating

26  provisions for redevelopment of a portion of the Site,

27  was entered on October 10, 2000 (the "Seventh Decree").

28

1    P.  An eighth partial consent decree, captioned
2 United States et al. v. Chevron Environmental
3 Management Company, et al. , Action No. CV 01-11162 MMM
4 (JWJx)("Eighth Decree") was entered on May 28, 2002.
5 The Eighth Decree addressed, among other things, the
6 work required by the Final ROD for the Final Remedy
7 Operable Unit, including the long-term operation and
8 maintenance of facilities constructed under the Gas
9 Control and Cover ROD, to the extent those activities
10 were not addressed under the Third Decree and the
11 Seventh Decree.  The Eighth Decree also resolved the
12 liability of certain generators of waste's liability
13 for the Matters Addressed by the Eighth Decree.
14 **V.          Definitions**
15    Unless otherwise expressly provided herein, terms
16 used in this Consent Decree that are defined in CERCLA
17 or in regulations promulgated under CERCLA shall have
18 the meaning assigned to them in CERCLA or in such
19 regulations.  Whenever terms listed below are used in
20 this Consent Decree, the following definitions shall
21 apply:
22    A.  "Cash-1 Defendants" shall mean those Defendants
23 that have selected the "Cash-1" *de minimis* covenants,
24 as set forth in Section XII (De Minimis Covenants Not
25 to Sue by the United States for the Cash-1 and the
26 Cash-1/R Defendants ("Tier 1" Covenants), page 38)) and
27 Section XV (Covenants by the State of California, page
28 47), and as identified in Appendix A.

14

B.   "Cash-2 Defendants" shall mean those Defendants
that have selected the "Cash-2" *de minimis* covenants,
as set forth in Section  XIII (De Minimis Covenants Not
to Sue by the United States for the Cash-2 and the
Cash-2/R Defendants ("Tier 2" Covenants), page 39) and
Paragraph XV.B (page 49) of Section XV (Covenants by
the State of California, page 47), and as identified in
Appendix A.

C.   "Cash-1/R Defendants" shall mean those
Defendants that have selected the "Cash-1" *de minimis*
covenants, as set forth in Paragraph V.A, above, and
that are also receiving covenants for matters addressed
in the First and Third Consent Decrees, as defined in
Section XIV (Covenants Not to Sue by the United States
for Matters Addressed in the First and Third Decrees,
page 43) and Paragraph XV.C (page 53) of Section XV
(Covenants by the State of California), and as
identified in Appendix A.  Cash-1/R Defendants either
declined to participate in one or more settlements for
the OII Site that were previously offered to them, or
did not receive such previous settlement offers.

D.   "Cash-2/R Defendants" shall mean those
Defendants that have selected the "Cash-2" *de minimis*
covenants, as set forth in Paragraph V.B, above, and
that are also receiving covenants for matters addressed
in the First and Third Consent Decrees, as defined in
Section XIV (Covenants Not to Sue by the United States
for Matters Addressed in the First and Third Decrees,

15

page 43) and Paragraph XV.C (page 53) of Section XV
(Covenants by the State of California), and as
identified in Appendix A.   Cash-2/R Defendants either
declined to participate in one or more settlements for
the OII Site that were previously offered to them, or
did not receive such previous settlement offers.

E.   "CERCLA" shall mean the Comprehensive
Environmental Response, Compensation, and Liability Act
of 1980, as amended, 42 U.S.C. § 9601   et seq.

F.   "Consent Decree" or "Ninth Partial Consent
Decree" shall mean this Ninth Partial Consent Decree
and its Appendices Exhibits.

G.   "Day" shall mean a calendar day. In computing
any period of time under this Consent Decree, where the
last day would fall on a Saturday, Sunday, or federal
holiday, the period shall run until the close of
business of the next day that is not a Saturday,
Sunday, or federal holiday.

H.   "Defendants" shall mean those parties
(including the Cash-1 Defendants, Cash-1/R Defendants,
Cash-2 Defendants, and Cash-2/R Defendants) listed in
Appendix A to this Ninth Partial Consent Decree.   The
Defendants have agreed to pay the amounts specified in
the Schedule(s) set forth in Appendix A.

I.   "Document Retention Period" shall mean:   (1)
for each Cash-2 Defendant and Cash-2/R Defendant, until
ten (10) years after the termination of this Consent
Decree; and (2) for each Cash-1 Defendant and Cash-1/R

1 | Defendant, the longer of thirty (30) years or the
2 | period specified for retention of documents in any
3 | prior settlement document for the OII Site to which
4 | that Defendant is a party.

5 | J. "DTSC" shall mean the California Department of
6 | Toxic Substances Control. Pursuant to a Memorandum of
7 | Understanding between DTSC and the California Regional
8 | Water Quality Control Board, DTSC is the lead agency of
9 | the State of California with respect to the Site. For
10 | purposes of this Consent Decree, "DTSC" shall include
11 | any successor agencies of the State of California,
12 | including, without limitation, any agencies that
13 | succeed to (1) DTSC's authority pursuant to the
14 | California Hazardous Substance Account Act, Health and
15 | Safety Code Section 25300, et seq.; or (2) DTSC's
16 | authority as the lead agency of the State of California
17 | with respect to the Site.

18 | K. "EPA" shall mean the United States
19 | Environmental Protection Agency and any successor
20 | departments or agencies of the United States.

21 | L. "Excluded Work" shall mean the response actions
22 | defined as Excluded Work in Section VIII of the Eighth
23 | Decree (Excluded Work), page 51 of the Eighth Decree)
24 | and in the Scope of Work to the Eighth Decree.

25 | M. "Excluded Work Oversight Costs" shall mean all
26 | costs including, but not limited to, direct and
27 | indirect costs, that the United States and the State
28 | incur in performing Oversight or otherwise overseeing

17

the implementation of the Eighth Decree relating to the
performance of the Excluded Work in the Eighth Decree
by the Work Defendants including, but not limited to,
payroll costs, contractor costs, travel costs,
laboratory costs and Interest on such costs.

N. "Final Record of Decision" or "Final ROD" shall
mean the Final Record of Decision for the OII Site,
signed by the Director of the Superfund Division for
EPA Region IX on September 30, 1996.

O. "Final Remedy" shall mean the remedies selected
in the Final ROD and the Gas Control and Cover ROD.

P. "Future Response Costs" shall mean Work
Oversight Costs, Excluded Work Oversight Costs, and all
other costs, including, but not limited to direct and
indirect costs, that the United States and the State
incur in reviewing or developing plans, reports and
other items pursuant to the Eighth Decree or this
Consent Decree; verifying the Work, or otherwise
implementing, overseeing, or enforcing the Eighth
Decree or this Consent Decree, including, but not
limited to, payroll costs, contractor costs, travel
costs, laboratory costs, the costs incurred pursuant to
Section X (Additional Work, page 55), Section XV
(Access and Institutional Controls, page 63) of the
Eighth Decree (including, but not limited to, the cost
of attorney time and any monies paid to secure access
and/or to secure or implement institutional controls,
including, but not limited to, the amount of just

18

compensation, if any); Paragraphs XVIII.I (page 93) of
Section VIII (Payment of Response Costs) and Paragraph
XXXIV.E (page 181) of Section XVII (Reservations of
Rights) of the Eighth Decree; and the costs incurred in
connection with formal or informal dispute resolution
under the Eighth Decree. Future Response Costs shall
not include: (1) any costs defined as Future Oversight
Costs in the Third Decree; (2) any costs incurred by
the United States or the State in overseeing the work
performed under UAO 97-02; or (3) any costs incurred by
the United States, or any costs in excess of $50,000
(fifty thousand dollars) incurred by the State, in
overseeing the Excluded Work (as defined in the Eighth
Consent Decree) to the extent that such Excluded Work
is performed by parties other than the Work Defendants.

Q.   "Gas Control and Cover Operable Unit" shall
mean the Gas Migration Control and Landfill Cover
Operable Unit, as described in the Gas Control and
Cover Record of Decision, as amended on September 28,
1990.

R.   "Gas Control and Cover Record of Decision" or
"Gas Control and Cover ROD" shall mean the Record of
Decision relating to the Gas Migration Control and
Landfill Cover Operable Unit at the Site signed by the
EPA Region IX Regional Administrator on September 30,
1988, as amended on September 28, 1990, which describes
the Gas Control and Cover Operable Unit.

S.   "HSAA" shall mean the California Hazardous

19

1 | Substance Account Act, California Health and Safety
2 | Code Sections 25300 <u>et seq.</u>

3 |     T. "HWCL" shall mean the Hazardous Waste Control
4 | Law, California Health & Safety Code Section 25100 <u>et</u>
5 | <u>seq.</u>

6 |     U. "Inflation Adjusted" shall mean the amount
7 | adjusted for inflation by the same percentage as the
8 | increase in the Consumer Price Index for all Urban
9 | Consumers (CPI-U) published by the Department of Labor,
10 | Bureau of Statistics, from the date of lodging of this
11 | Consent Decree. In the event the CPI-U is no longer
12 | available, an appropriate substitute index as
13 | determined by EPA shall be used.

14 |     V. "Interest" shall mean interest at the rate
15 | specified for interest on investments of the EPA
16 | Hazardous Substance Superfund established under
17 | Subchapter A of Chapter 98 of Title 26 of the U.S.
18 | Code, compounded on October 1 of each year, in
19 | accordance with 42 U.S.C. § 9607(a).

20 |     W. "Interim Response Costs" shall mean all costs,
21 | including, but not limited to, direct and indirect
22 | costs, incurred by the United States prior to December
23 | 28, 2001 but paid after June 30, 1997. Interim
24 | Response Costs shall also include all Interest on the
25 | Past Response Costs that accrued pursuant to 42 U.S.C.
26 | § 9607(a) during the period from September 30, 1997 to
27 | December 28, 2001.

28 |

1    X.   "Matters Addressed in this Consent Decree"
2    shall mean (1) Natural Resource Damages with respect to
3    the Site and (2) the Work, the Excluded Work, Past
4    Response Costs, Interim Response Costs, Excluded Work
5    Oversight Costs, and Future Response Costs. "Matters
6    Addressed in this Consent Decree" does not include
7    those response costs or response actions as to which
8    EPA or DTSC has reserved its rights under this Consent
9    Decree, nor any response actions that may be
10   implemented or response costs that may be incurred
11   pursuant to any future decision document(s) issued
12   pursuant to any rights reserved herein by the
13   Plaintiffs, including, but not limited to, those
14   reserved in Section XIII (De Minimis Covenants Not to
15   Sue by the United States for the Cash-2 and the
16   Cash-2/R Defendants ("Tier 2" Covenants), page 39),
17   Section XIV(Covenants Not to Sue for Matters Addressed
18   in the First and Third Decrees, page 43), Section XV
19   (Covenants by the State of California, page 47), and
20   Section XVII (Reservations of Rights, page 58).
21   Y.   "Matters Addressed in the Eighth Decree" shall
22   mean (1) Natural Resource Damages with respect to the
23   Site and (2) the Work, the Excluded Work, Past Response
24   Costs, Excluded Work Oversight Costs, and Future
25   Response Costs, as those terms are defined in the
26   Eighth Decree.
27
28

1    Z.   "Matters Addressed in the First Decree" shall
2  mean:   the implementation of the remedial alternative
3  selected in the Site Control and Monitoring Record of
4  Decision signed by the EPA Region IX Deputy Regional
5  Administrator on July 31, 1987 ("SCM ROD"); the
6  implementation of the remedial alternative selected in
7  the Leachate Management Record of Decision signed by
8  the EPA Region IX Deputy Regional Administrator on
9  November 16, 1987 ("LM ROD"); oversight costs
10 associated with the performance of that work; and all
11 past response costs, including, but not limited to,
12 interest and indirect costs, that the United States has
13 incurred with regard to the Site up to June 1, 1988.
14 Matters Addressed in the First Decree specifically do
15 not include removal(s), remedial action(s) that will be
16 implemented not as part of the First Decree, or any
17 response action(s) for the OII Site that will be
18 implemented pursuant to the Final ROD or any future
19 decision document(s).

20    AA.   "Matters Addressed in the Third Decree" shall
21 mean the Work and the Excluded Work, as those terms are
22 defined in the Third Decree; Future Oversight Costs, as
23 that term is defined in the Third Decree; and Past
24 Response Costs, as that term is defined in the Third
25 Decree.   Matters Addressed in the Third Decree
26 specifically do not include removal(s), remedial
27 action(s) that will be implemented not as part of the
28 Third Decree, or any response action(s) for the OII

1 Site that will be implemented pursuant to the Final ROD
2 or any future decision document(s).

3    BB.   "Municipal Sewage Sludge" or "MSS" shall mean
4 any solid, semi-solid, or liquid residue removed during
5 the treatment of municipal waste water or domestic
6 sewage and may include residue removed, all or in part,
7 during the treatment of wastewater from manufacturing
8 or processing operations, provided that such residue
9 has essentially the same characteristics as residue
10 removed during the treatment of domestic sewage.

11    CC.   "Municipal Solid Waste" or "MSW" shall mean
12 household waste and solid waste collected from
13 non-residential sources that is essentially the same as
14 household waste.  While the composition of such wastes
15 may vary considerably, municipal solid waste generally
16 is composed of large volumes of non-hazardous
17 substances (e.g., yard waste, food waste, glass, and
18 aluminum) and can contain small amounts of such other
19 wastes as typically may be accepted in RCRA Subtitle D
20 landfills.

21    DD.   "National Contingency Plan" or "NCP" shall
22 refer to the National Oil and Hazardous Substances
23 Pollution Contingency Plan promulgated pursuant to
24 Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40
25 C.F.R. Part 300.

26    EE.   "Natural Resources" shall have the meaning
27 provided in Section 101(16) of CERCLA, 42 U.S.C.
28 § 9601(16), and under any applicable provisions of

23

1 | state law.

2 |     FF.  "Natural Resource Damages" shall mean damages,
3 | including the costs of damage assessment, recoverable
4 | under Section 107 of CERCLA, 42 U.S.C. § 9607, and any
5 | applicable provisions of state law, for injury to,
6 | destruction of, or loss of any and all Natural
7 | Resources.

8 |     GG.  "OII Disbursement Special Account" shall mean
9 | the disbursement special account(s) established for the
10 | Site by EPA pursuant to Section 122(b)(3) of CERCLA, 42
11 | U.S.C. § 9622(b)(3), and under this Consent Decree or
12 | otherwise established by EPA in connection with prior
13 | settlements for the Site.

14 |     HH.  "OII Site" or the "Site" shall mean the
15 | "facility," as that term is defined at Section 101(9)
16 | of CERCLA, 42 U.S.C. § 9601(9), and shall mean the
17 | landfill located at 900 Potrero Grande Drive in
18 | Monterey Park, California.

19 |     II.  "OII Special Account" shall mean the special
20 | account(s) established for the Site by EPA pursuant to
21 | Section 122(b)(3) of CERCLA, 42 U.S.C. § 9622(b)(3),
22 | and under this Consent Decree or otherwise established
23 | by EPA in connection with prior settlements for the
24 | Site.

25 |     JJ.  "Paragraph" shall mean a portion of this
26 | Consent Decree identified by a capital letter.

27 |     KK.  "Parties" shall mean the United States, the
28 | State, the State Accounts, and the Defendants.

24

1  LL.  "Past Response Costs" shall mean:  (1) all
2  costs including, but not limited to, direct and
3  indirect costs, that the United States paid at or in
4  connection with the Site through December 28, 2001,
5  plus Interest on all such costs that has accrued
6  pursuant to 42 U.S.C. § 9607(a) through such date, but
7  excluding costs for which the United States has been
8  reimbursed and excluding oversight expenses for the
9  Third Decree; and (2) all costs, including, but not
10 limited to, direct costs, indirect costs, and interest,
11 that the State, and the State Accounts paid at or in
12 connection with the Site through December 28, 2001,but
13 excluding costs for which the State and said accounts
14 have been reimbursed and excluding oversight expenses
15 for the Third Decree paid or to be paid by the persons
16 who are defendants under that Decree.

17     MM.  "Plaintiffs" shall mean the United States, the
18 State, and the State Accounts.

19     NN.  "RCRA" shall mean the Solid Waste Disposal
20 Act, as amended, 42 U.S.C. § 6901  et seq.  (also known
21 as the Resource Conservation and Recovery Act).

22     OO.  "Remedial Action" shall mean those activities
23 to be undertaken by the Work Defendants to implement
24 the Gas Control and Cover ROD and the Final ROD, in
25 accordance with the SOW and the final Work Plan and
26 other plans approved by EPA under the Eighth Decree.
27 "Remedial Action" does not include Operation and
28 Maintenance as that term is defined in the Eighth

1 | Decree.

2 |     PP.  "Remedial Design" shall mean those activities,
3 | including, but not limited to, investigations,
4 | predesign, and interim monitoring, to be undertaken by
5 | the Work Defendants to develop the final plans and
6 | specifications for the Remedial Action.

7 |     QQ.  "Section" shall mean a portion of this Consent
8 | Decree identified by a Roman numeral.

9 |     RR.  "State" shall mean the State of California on
10 | behalf of the Department of Toxic Substances Control.

11 |     SS.  "State Accounts" shall mean the California
12 | Hazardous Substance Account, the California Hazardous
13 | Waste control Account, the California Toxic Substances
14 | Control Account and the California Site Remediation
15 | Account, and any predecessors and successors to those
16 | accounts, to the extent that funds have been or will be
17 | expended from those accounts on behalf of DTSC.

18 |     TT.  "Subparagraph" shall mean a portion of this
19 | Consent Decree identified by (as indicated by context)
20 | an Arabic numeral or a lowercase letter, or any
21 | outline/paragraph identifier other than a capital
22 | letter or a Roman numeral.

23 |     UU.  "United States" shall mean the United States
24 | of America, including, but not limited to, all of its
25 | departments, agencies, and instrumentalities, and
26 | includes without limitation EPA, the Department of the
27 | Navy, and any federal Natural Resources trustee.

28 |

1    VV.  "USACE" shall mean the United States Army
2 Corps of Engineers.
3    WW.  "Waste Material" shall mean (1) any "hazardous
4 substance" under Section 101(14) of CERCLA, 42 U.S.C.
5 § 9601(14); (2) any "pollutant or contaminant" under
6 Section 101(33) of CERCLA, 42 U.S.C. § 9601(33); (3)
7 any "solid waste" under Section 1004(27) of RCRA, 42
8 U.S.C. § 6903(27); and (4) any "hazardous substance"
9 under California Health and Safety Code §§ 25316 and
10 25317.
11    XX.  "Work" shall mean all activities the Work
12 Defendants  are required to perform under the Eighth
13 Decree, except those required by Section XVII of the
14 Eighth Decree (Retention of Records, page 78).
15    YY. "Work Defendants" shall mean those listed in
16 Exhibit E to the Eighth Decree.
17    ZZ.  "Work Oversight Costs" shall mean all costs
18 including, but not limited to, direct and indirect
19 costs, that the United States incurs in performing
20 Oversight or otherwise overseeing the implementation of
21 the Eighth Decree relating to the performance of the
22 Work including, but not limited to, payroll costs,
23 contractor costs, travel costs, laboratory costs and
24 Interest on such costs.  Work Oversight Costs do not
25 include (1) the costs of enforcing the Eighth Decree or
26 this Consent Decree; (2) the costs incurred in
27 connection with formal or informal dispute resolution
28 under the Eighth Decree; (3) the costs incurred to

1  implement Work including, but not limited to, Work
2  performed under Subparagraph VII.C.5 (page 51) of
3  Section VII (Work to be Performed) of the Eighth
4  Decree; (4) costs incurred pursuant to Paragraph (page
5  68) of Section XV of the Eighth Decree (Access and
6  Institutional Controls); or (5) the costs incurred in
7  performing Oversight of or otherwise overseeing the
8  implementation of the Excluded Work.
9  VI.            General Provisions
10     A.   Objectives
11     The objectives of the Parties in entering into this
12 Consent Decree are to reimburse the Plaintiffs'
13 response costs and to resolve the Plaintiffs' claims
14 against Defendants and the claims of the Defendants
15 that have been or could have been asserted against the
16 United States with regard to the Matters Addressed in
17 this Consent Decree, as provided in this Consent
18 Decree.
19     B.   Commitments by the Defendants
20     As provided in this Consent Decree, the Defendants
21 shall reimburse the United States and the State for
22 response costs, as provided in this Consent Decree.
23 VII.           Retention of Records
24     A.   Each Defendant shall preserve and retain all
25 records and documents now in its possession or control
26 or that come into the possession or control of the
27 Defendants or of their divisions, subsidiaries, or
28 parent corporations and their employees, agents,

28

1 accountants, contractors or attorneys that relate to
2 the performance of the Work or the Excluded Work or
3 that fall within the scope of Section 104(e) of CERCLA,
4 42 U.S.C. § 9604(e), regardless of any corporate
5 document retention policy to the contrary, during the
6 Document Retention Period.
7    B.   Each Defendant shall preserve and shall
8 instruct all contractors, subcontractors and anyone
9 else acting on the Defendants' behalf at the OII Site
10 to preserve (in the form of originals or exact copies
11 or, in the alternative, copies preserved on microfiche
12 or through similar technology) all documents, records,
13 and information specified above during the Document
14 Retention Period applicable to that Defendant.  At the
15 conclusion of this Document Retention Period, each
16 Defendant shall notify the United States, EPA, and the
17 State at least ninety (90) Days prior to the
18 destruction of any such records or documents, and, upon
19 request by the United States, EPA, or the State made
20 within forty-five (45) Days of such notice, any
21 Defendant proposing such destruction shall deliver or
22 make available any such records or documents to EPA or
23 the State, as appropriate.  The Defendants are not
24 obligated to provide any materials pursuant to this
25 Section VII (Retention of Records) that are subject to
26 applicable attorney work product claims or
27 attorney-client privilege, or both.
28

1    C.   EPA shall preserve and retain all records and
2  documents now in its possession or control, or in the
3  possession or control of its divisions, employees,
4  agents, accountants, contractors or attorneys, that
5  relate to any field activities at the Site performed by
6  EPA, that are received under the provisions of Section
7  104 of CERCLA, or that relate to the performance of the
8  Work or the Excluded Work under the Eighth Decree, as
9  required by the EPA Office of Information Resources
10  Management Document Number 2160, entitled   Records
11  Management Manual  and the corresponding EPA Records
12  Management Manual, Appendix B,   Records Control
13  Schedule .

14    D.   The State shall preserve and retain all records
15  and documents now in its possession or control, or in
16  the possession or control of its divisions, employees,
17  agents, accountants, contractors or attorneys, that
18  relate to the performance of the Work or the Excluded
19  Work under the Eighth Decree or that relate to
20  activities performed or investigations or enforcement
21  actions taken by the State at the OII Site, regardless
22  of any document retention policy to the contrary,
23  during the pendency of this Consent Decree and for ten
24  (10) years after its termination.

25    E.   Each Defendant hereby affirms, individually,
26  that the Defendant has not willfully, recklessly or
27  with gross negligence altered, mutilated, discarded,
28  destroyed or otherwise disposed of any records,

1  documents, or other information relating to any party's
2  potential liability with regard to the Site since the
3  notification of that Defendant's potential liability by
4  the United States or the State, or the date of lodging
5  of this Consent Decree, whichever is earliest.

6      F.   The failure of any Defendant to preserve and
7  retain all records and documents as required by this
8  Section VII (Retention of Records) shall subject each
9  such Defendant to the stipulated penalties set forth in
10  Section X (Stipulated Penalties, page 34).

11     G.   This Section shall not apply to exact
12  duplicates.

13  **VIII.**        **Payment of Response Costs**

14     A.   United States' Response Costs

15         1.   The Defendants agree to reimburse the OII
16  Special Account within the EPA Hazardous Substance
17  Superfund for certain response costs that have been
18  incurred or will be incurred by the United States in
19  responding to the conditions at the OII Site.

20     B.   Payment Obligations of Defendants .

21         1.   Each Defendant listed in Appendix A shall
22  make payments in the amounts set forth in Appendix A to
23  this Consent Decree.  Unless otherwise specified in
24  Appendix A, payment shall be due within thirty (30)
25  Days of notice of entry of this Consent Decree.
26  Payments shall be made by the Defendants by FedWire
27  Electronic Funds Transfer ("EFT") to the U.S.
28  Department of Justice account in accordance with

<center>31</center>

1   current EFT procedures, referencing EPA Site/Spill ID
2   Number 0958 and DOJ Case Number 90-11-2-156/12.
3   Payment shall be made in accordance with EFT
4   instructions provided to the Defendants by the
5   Financial Litigation Unit of the U.S. Attorney's Office
6   in the Central District of California following the
7   lodging of the Consent Decree.  Any payment received by
8   the Department of Justice after 4:00 p.m. (Eastern
9   Time) will be credited on the next business day. Each
10  Defendant's monetary obligation under this Consent
11  Decree shall be limited to the amounts set forth in
12  Appendix A, except as otherwise provided in this
13  Consent Decree.
14          2.  At the time of payment, each Defendant
15  shall also send notice that payment has been made to
16  EPA and DOJ in accordance with Section XX (Form of
17  Notice).  Such notice shall reference the EPA Region
18  and Site/Spill Identification Number 0958, DOJ case
19  number 90-11-2-156/12, and the civil action number.
20          3.  The total amount to be paid pursuant to
21  this Paragraph VIII.B shall be deposited in the OII
22  Special Account within the EPA Hazardous Substance
23  Superfund to be retained and used to conduct or finance
24  response actions at or in connection with the OII Site,
25  or to be transferred by EPA to the EPA Hazardous
26  Substance Superfund.
27          4.  Any payment made pursuant to this Section
28  shall not constitute an admission by the Defendants of

1 any liability to EPA, the State, or any other person or
2 agency.
3       5.   Nothing in this Section VIII (Payment of
4 Response Costs) shall affect EPA's right to
5 reimbursement of its Future Response Costs from any
6 other person not a signatory to this Consent Decree.
7       6.   Payment of money by the Defendants to the
8 OII Special Account is not a fine, penalty or monetary
9 sanction.
10      7.   Interest on Late Payments .  If any
11 Defendant fails to make any payment under this
12 Paragraph VIII.B by the required due date, Interest
13 shall continue to accrue on the unpaid balance through
14 the date of payment.
15 **IX.        Priority of Claims**
16      The Defendants' claims against any other party for
17 contribution or indemnification of all or a portion of
18 the cost of their settlement herein shall be
19 subordinate to any claim of the United States and the
20 State against such other party relating to the OII Site
21 as to any unreimbursed costs for the response actions
22 taken or other costs incurred by the United States and
23 the State related to the Site, as provided for by
24 Section 113(f)(3)(C) of CERCLA, 42 U.S.C.
25 § 9613(f)(3)(C).  The United States and the State shall
26 have priority over the Defendants in the collection of
27 any judgment obtained against any nonsettling party.
28 The Defendants shall notify EPA of any contribution

33

1  action with regard to the Site.

2  **X.**        **Stipulated Penalties**

3     A.   <u>General Provisions</u>

4        1.   Each Defendant shall be liable for

5  stipulated penalties for:  (1) late or inadequate

6  payment by that Defendant pursuant to Subparagraph

7  VIII.B.1 (page 31) of Section VIII (Payment of Response

8  Costs) and Appendix A to this Consent Decree; or (2) a

9  violation by that Defendant of Section VII (Retention

10 of Records, page 28).

11        2.   The stipulated penalty for any late

12 payment or payment of less than the full amount due

13 under this Consent Decree shall be $5,000 (five

14 thousand dollars) per Day for the first ten (10) Days,

15 $10,000 (ten thousand dollars) per Day thereafter until

16 ten (10) Days after EPA sends notice of delinquency to

17 the party, and $25,000 (twenty-five thousand dollars)

18 per Day thereafter.

19        3.   The stipulated penalty for any violation

20 of the Defendants' obligations under Section VII

21 (Retention of Records, page 25) shall be $3,000 (three

22 thousand dollars) per Day per Event for the first

23 fifteen (15) Days, $7,000 (seven thousand dollars) per

24 Day per Event for the sixteenth (16th) through the

25 thirtieth (30th) day, $10,000 (ten thousand dollars)

26 per Day per Event for the thirty-first (31st) through

27 the forty-fifth (45th) Day, and $15,000 (fifteen

28 thousand dollars) per Day per Event for the forty-sixth

1 (46th) Day and each Day thereafter.

2        4.   Except as provided in Subparagraph X.A.2,

3 penalties shall accrue from the date on which a

4 violation of this Consent Decree occurs and shall

5 continue to accrue through the final Day of the

6 noncompliance.

7        5.   Stipulated penalties under this Paragraph

8 X.A shall be paid within thirty (30) Days of receipt of

9 the written demand for payment of stipulated penalties.

10 Failure to pay a stipulated penalty on time also

11 constitutes a late payment subject to stipulated

12 penalties.  Paragraph shall be identified as

13 "stipulated penalties" and shall be made by certified

14 or cashier's check made payable to "EPA Hazardous

15 Substance Superfund."  The check, or a letter

16 accompanying the check, shall reference the name and

17 address of the party(ies) making payment, the Site

18 name, the EPA Region and Site Spill ID Number 0958, DOJ

19 Case Number 90-11-2-156/12, and the civil action

20 number. Settling Defendants shall send the check (and

21 any accompanying letter) to:

22                    U.S. Environmental Protection Agency
                     Region 9 Superfund Program
23                    P.O. Box 371099M
                     Pittsburgh, PA 15251

24 At the time of each payment, Settling Defendants shall

25 also send notice that payment has been made to EPA and

26 DOJ in accordance with Section XX (Form of Notice).

27 Such notice shall reference the EPA Region and

28 Site/Spill ID Number 0958, DOJ Case Number

1  90-11-2-156/12, and the civil action number.

2          6.   The Defendants shall pay Interest on all

3  stipulated penalties, which shall accrue from the date

4  payment is due.

5          7.   All stipulated penalties provided for in

6  this Section shall be Inflation Adjusted.

7          8.   Notwithstanding the stipulated penalties

8  specified in the provisions of this Section, and to the

9  extent authorized by law, EPA or the State may elect to

10  assess civil penalties or bring an action in District

11  Court to enforce the provisions of this Consent Decree.

12  Payment of stipulated penalties shall not preclude EPA

13  or the State from electing to pursue any other remedy

14  or sanction against any Defendant to enforce this

15  Consent Decree, provided that the total shall not

16  exceed the CERCLA statutory maximum per Day per

17  violation.

18          9.   Separate penalties shall accrue

19  simultaneously for separate violations of this Consent

20  Decree.

21          10.  Notwithstanding any other provision of

22  this Section, the United States may, in its

23  unreviewable discretion, waive any portion of

24  stipulated penalties that have accrued pursuant to this

25  Consent Decree.  Payment of Stipulated penalties shall

26  not excuse the Defendants from payment as required by

27  Section VIII (Payment of Response Costs) or from

28  performance of any other requirements of this Consent

1  Decree.

2         11.  If the United States and/or the State

3  brings an action against a Defendant to enforce this

4  Consent Decree, that Defendant shall reimburse the

5  United States and/or the State for all costs of such

6  action, including but not limited to the costs of

7  attorney time.

8  **XI.**              **Certification by Each Defendant**

9         By signing this Consent Decree, each Defendant

10 individually certifies, to the best of its knowledge

11 and belief, that:  (I) it has conducted a thorough,

12 comprehensive, good-faith search for documents and has

13 fully and accurately disclosed to EPA all information

14 currently in its possession, or in the possession of

15 its officers, directors, employees, contractors or

16 agents, that relates in any way to the ownership,

17 operation, or control of the Site, or to the ownership,

18 possession, generation, treatment, transportation,

19 storage or disposal of a hazardous substance,

20 pollutant, or contaminant at or in connection with the

21 Site; (ii) it did not contribute any hazardous

22 substances that are significantly more toxic or of

23 significantly greater hazardous effect than those

24 listed in Appendix C, Contaminants List; (iii) it has

25 not altered, mutilated, discarded, destroyed, or

26 otherwise disposed of any records, documents, or other

27 information relating to its potential liability

28 regarding the Site after notification of potential

1  liability or the filing of a suit against it regarding

2  the Site; and (iv) it has fully complied with any and

3  all EPA requests for information regarding the Site

4  pursuant to Sections 104(e) and 122(e) of CERCLA, 42

5  U.S.C. §§ 9604(e) and 9622(e).

6  XII.    **De Minimis Covenants Not to Sue by the United States for the Cash-1 and the Cash-1/R Defendants ("Tier 1" Covenants)**

7

8       In consideration of the actions that will be

9  performed and the payments that will be made by the

10 Cash-1 Defendants and the Cash-1/R Defendants under the

11 terms of this Consent Decree, and except as

12 specifically provided in Section XVII (Reservations of

13 Rights, page 58), the United States covenants not to

14 sue or to take administrative action against the Cash-1

15 Defendants and the Cash-1/R Defendants pursuant to

16 Sections 106 and 107(a) of CERCLA and Section 7003 of

17 RCRA relating to the Matters Addressed in this Consent

18 Decree.  With respect to present and future liability,

19 these covenants not to sue shall take effect as to each

20 Cash-1 Defendant or Cash-1/R Defendant upon the receipt

21 by EPA of the entire payment required of that Cash-1

22 Defendant or Cash-1/R Defendant under Subparagraph

23 VIII.B.1 (Page 31) of Section VIII (Payment of Response

24 Costs).  With respect to each Cash-1 Defendant or

25 Cash-1/R Defendant, individually, these covenants not

26 to sue are conditioned upon:  (1) the satisfactory

27 performance by that Defendant of all of its obligations

28 under this Consent Decree; and (2) the veracity of the

38

1  information provided to EPA by that Defendant relating

2  to that Defendant's involvement with the Site.   These

3  covenants not to sue extend only to the Cash-1

4  Defendants and the Cash-1/R Defendants and do not

5  extend to any other person.

6  **XIII.**            **De Minimis Covenants Not to Sue by the**
                       **United States for the Cash-2 and the Cash-**

7                      **2/R Defendants ("Tier 2" Covenants)**

8       A.   In consideration of the actions that will be

9  performed and the payments that will be made by the

10  Cash-2 Defendants and the Cash-2/R Defendants under the

11  terms of this Consent Decree, and except as

12  specifically provided in Paragraphs XIII.B, XIII.C, and

13  XIII.D of this Section and in Section XVII

14  (Reservations of Rights, page 58), the United States

15  covenants not to sue or to take administrative action

16  against the Cash-2 Defendants and the Cash-2/R

17  Defendants pursuant to Sections 106 and 107(a) of

18  CERCLA and Section 7003 of RCRA relating to the Matters

19  Addressed in this Consent Decree.   With respect to

20  present and future liability, these covenants not to

21  sue shall take effect as to each Cash-2 Defendant or

22  Cash-2/R Defendant upon the receipt by EPA of the

23  entire payment required of that Cash-2 Defendant or

24  Cash-2/R Defendant under Subparagraph VIII.B.1 (page

25  31) of Section VIII (Payment of Response Costs).   With

26  respect to each Cash-2 Defendant or Cash-2/R Defendant,

27  individually, these covenants not to sue are

28  conditioned upon (1) the satisfactory performance by

1 that Defendant of all of its obligations under this
2 Consent Decree; and (2) the veracity of the information
3 provided to EPA by that Defendant relating to that
4 Defendant's involvement with the Site.  These covenants
5 not to sue extend only to the Cash-2 Defendants and the
6 Cash-2/R Defendants and do not extend to any other
7 person.

8    B.  United States' Pre-certification Reservations
as to the Cash-2 and the Cash-2/R Defendants

9    Notwithstanding any other provision of this Consent
10 Decree, the United States reserves, and this Consent
11 Decree is without prejudice to, the right to institute
12 proceedings in this action or in a new action, or to
13 issue an administrative order, seeking to compel the
14 Cash-2 Defendants and the Cash-2/R Defendants (1) to
15 perform further response actions relating to the Site
16 or (2) to reimburse the United States for additional
17 costs of response if, prior to Certification of
18 Completion of the Remedial Action:

19       (i)  conditions at the Site, previously unknown
20            to EPA, are discovered, or
21       (ii) information, previously unknown to EPA, is
22            received, in whole or in part,

23 and EPA determines that these previously unknown
24 conditions or information together with any other
25 relevant information indicates that the Remedial Action
26 is not protective of human health or the environment.
27 If EPA makes such a determination, the State reserves,
28 and this Consent Decree is without prejudice to, the

40

1  right to institute proceedings in this action or in a
2  new action, or to issue an administrative order seeking
3  to compel the Cash-2 Defendants and the Cash-2/R
4  Defendants to reimburse the State for additional costs
5  of response.
6      C.  United States' Post-certification Reservations
            as to the Cash-2 and the Cash-2/R Defendants
7          Notwithstanding any other provision of this Consent
8  Decree, the United States reserves, and this Consent
9  Decree is without prejudice to, the right to institute
10  proceedings in this action or in a new action, or to
11  issue an administrative order seeking to compel the
12  Cash-2 Defendants and the Cash-2/R Defendants (1) to
13  perform further response actions relating to the Site
14  or (2) to reimburse the United States for additional
15  costs of response if, subsequent to Certification of
16  Completion of the Remedial Action:
17          (i)  conditions at the Site, previously unknown
18              to EPA, are discovered, or
19          (ii) information, previously unknown to EPA, is
20              received, in whole or in part,
21  and EPA determines that these previously unknown
22  conditions or this information together with other
23  relevant information indicates that the Remedial Action
24  is not protective of human health or the environment.
25  If EPA makes such a determination, the State reserves,
26  and this Consent Decree is without prejudice to, the
27  right to institute proceedings in this action or in a
28  new action, or to issue an administrative order seeking

41

1   to compel the Cash-2 Defendants and the Cash-2/R

2   Defendants to reimburse the State for additional costs

3   of response.

4       D.   The United States' Reservations with Respect to
            Natural Resource Damages as to the Cash-2 and

5           the Cash-2/R Defendants

6       Notwithstanding any other provision of this Consent

7   Decree, the United States reserves, and this Consent

8   Decree is without prejudice to, the right to institute

9   proceedings against the Cash-2 Defendants and the

10  Cash-2/R Defendants in this action or in a new action

11  to seek relief for injury to, destruction of, or loss

12  of Natural Resources, if:

13          (i)   conditions at the Site, previously unknown

14                to EPA, are discovered, or

15          (ii) information, previously unknown to EPA, is

16                received, in whole or in part,

17  and EPA determines that these previously unknown

18  conditions or information together with any other

19  relevant information indicates that the damages to

20  Natural Resources resulting from the contamination of

21  the Site are significantly greater than those

22  previously known to EPA.

23      E.   For purposes of Paragraphs XIII.B and XIII.D,

24  the information and the conditions known to EPA shall

25  include only that information and those conditions

26  known to EPA as of the date the Final ROD was signed

27  and set forth in the Final ROD for the Site and the

28  administrative record supporting the Final ROD.   For

                            42

1  purposes of Paragraph XIII.C, the information and the
2  conditions known to EPA shall include only that
3  information and those conditions known to EPA as of the
4  date of Certification of Completion of the Remedial
5  Action and set forth in the Final ROD, the
6  administrative record supporting the Final ROD, the
7  post-ROD administrative record (if any), or in any
8  information received by EPA pursuant to the
9  requirements of the Third Decree or the Eighth Decree
10 prior to Certification of Completion of the Remedial
11 Action.

12 **XIV.**          **Covenants Not to Sue by the United**
                    **States for Matters Addressed in the**
13                  **First and Third Decrees**

14      A.   In consideration of the actions that will be
15 performed and the payments that will be made by the
16 Cash-1/R Defendants and the Cash-2/R Defendants under
17 the terms of this Consent Decree, and except as
18 specifically provided for in Paragraphs XIV.C and XIV.D
19 of this Section and in Section XVII (Reservations of
20 Rights, page 58), the United States covenants not to
21 sue or to take administrative action against the
22 Cash-1/R Defendants and the Cash-2/R Defendants
23 pursuant to Sections 106 and 107(a) of CERCLA and
24 Section 7003 of RCRA for the Matters Addressed in the
25 First Decree and for the Matters Addressed in the Third
26 Decree.

27      B.   As to each Cash-1/R Defendant and each Cash-2/R
28 Defendant, these covenants not to sue shall take effect

43

upon the receipt by EPA of the entire payment required

of that Cash-1/R Defendant or Cash-2/R Defendant under

Subparagraph VIII.B.1 (page 31) of Section VIII

(Payment of Response Costs). With respect to each

Defendant individually, these covenants not to sue are

conditioned upon: (1) the satisfactory performance by

that Defendant of all of its obligations under this

Consent Decree; and (2) the veracity of the information

provided to EPA by that Defendant relating to that

Defendant's involvement with the Site. These covenants

not to sue extend only to the Cash-1/R Defendants and

the Cash-2/R Defendants and do not extend to any other

person.

   C.   <u>United States' Pre-certification Reservations
        as to the Matters Addressed in the Third Decree</u>

   Notwithstanding any other provision of this Consent

Decree, the United States reserves, and this Consent

Decree is without prejudice to, the right to institute

proceedings in this action or in a new action, or to

issue an administrative order seeking to compel the

Cash-1/R Defendants and the Cash-2/R Defendants:   (1)

to perform further response actions relating to the

Remedial Action as that term is defined in Section XXV

of the Third Decree (Certificate of Completion, page 91

of the Third Decree), or (2) to reimburse the United

States for additional costs of response if, prior to

certification of completion of the Remedial Action

under the Third Decree:

(i)   conditions at the Site, previously unknown
to the United States, are discovered after
the entry of this Consent Decree, or

(ii) information is received, in whole or in
part, after the entry of this Consent
Decree,

and EPA determines that these previously unknown
conditions or this information together with any other
relevant information indicates that the Remedial Action
as defined in the Third Decree is not protective of
human health or the environment.  If EPA makes such a
determination, the State reserves, and this Consent
Decree is without prejudice to, the right to institute
proceedings in this action or in a new action, or to
issue an administrative order seeking to compel the
Cash-1/R Defendants and the Cash-2/R Defendants to
reimburse the State for additional costs of response.

D.   <u>United States' Post-certification Reservations
as to the Matters Addressed in the Third Decree</u>

Notwithstanding any other provision of this Consent
Decree, the United States reserves, and this Consent
Decree is without prejudice to, the right to institute
proceedings in this action or in a new action, or to
issue an administrative order seeking to compel the
Cash-1/R Defendants and the Cash-2/R Defendants:   (1)
to perform further response actions relating to the
Remedial Action as that term is defined in Section XXV
of the Third Decree (Certificate of Completion, page 91
of the Third Decree), or (2) to reimburse the United

1  States for additional costs of response if, subsequent
2  to certification of completion of the Remedial Action
3  under the Third Decree:

4        (i) conditions at the Site, previously unknown
5          to the United States, are discovered after
6          the certification of completion, or
7        (ii) information is received, in whole or in
8          part, after the certification of
9          completion,

10  and EPA determines that these previously unknown
11  conditions or this information together with other
12  relevant information indicates that the Remedial Action
13  as defined in the Third Decree is not protective of
14  human health or the environment.  If EPA makes such a
15  determination, the State reserves, and this Consent
16  Decree is without prejudice to, the right to institute
17  proceedings in this action or in a new action, or to
18  issue an administrative order seeking to compel the
19  Cash-1/R Defendants and the Cash-2/R Defendants to
20  reimburse the State for additional costs of response.
21      E.  For the purposes of Paragraph XIV.C of this
22  Consent Decree, the information and the conditions
23  known to the United States shall include only that
24  information and those conditions set forth in: (1) the
25  Gas ROD; (2) the administrative record supporting the
26  Gas ROD; and (3) information received by EPA pursuant
27  to the Remedial Investigation after the completion of
28  the administrative record supporting the Gas ROD, prior

46

1  to the entry of the Third Decree.  For the purposes of
2  Paragraph XIV.D of this Consent Decree, the information
3  and conditions known to the United States shall include
4  only that information and those conditions set forth
5  in: (1) the Gas ROD; (2) the administrative record
6  supporting the Gas ROD; (3) information submitted to
7  EPA pursuant to the requirements of the Third Decree or
8  submitted to EPA pursuant to any other action
9  implementing the Excluded Work under the Third Decree
10 prior to the certification of completion of the
11 Remedial Action as defined in the Third Decree; and (4)
12 information received by EPA pursuant to the Remedial
13 Investigation after completion of the administrative
14 record supporting the Gas ROD, prior to the
15 certification of completion of the Remedial Action as
16 defined in the Third Decree.
17      F.   This Section is not, and shall not be construed
18 as, a covenant not to sue any Defendant that does not
19 fulfill its obligations arising out of this Consent
20 Decree, or any other person or entity not a Party to
21 this Consent Decree.
22 **XV.**          **Covenants by the State of California**
23      The State, the State Accounts and the Attorney
24 General of California with respect to his Authority
25 under Government Code Sections 12660 through 12612
26 (collectively the "State Covenant Providers") provide
27 the following covenants not to sue:
28

47

A.   **De Minimis Covenants Not to Sue by the State for the Cash-1 and the Cash-1/R Defendants ("Tier 1" Covenants)**

In consideration of the actions that will be performed and the payments that will be made by the Cash-1 Defendants and the Cash-1/R Defendants under the terms of this Consent Decree, and except as specifically provided in Section XVII (Reservations of Rights, page 58), the State Covenant Providers covenant not to sue or to take administrative action against the Cash-1 Defendants and the Cash-1/R Defendants pursuant to Section 107 of CERCLA, Section 7003 of RCRA, California Civil Code Section 3494, HWCL, or the HSAA, relating to the Matters Addressed in this Consent Decree. With respect to present and future liability, these covenants not to sue shall take effect as to each Cash-1 Defendant or Cash-1/R Defendant upon the receipt by EPA of the entire payment required of that Cash-1 Defendant or Cash-1/R Defendant under Subparagraph VIII.B.1 (page 31) of Section VIII (Payment of Response Costs). With respect to each Cash-1 Defendant or Cash-1/R Defendant, individually, these covenants not to sue are conditioned upon:  (1) the satisfactory performance by that Defendant of all of its obligations under this Consent Decree; and (2) the veracity of the information provided to EPA by that Defendant relating to that Defendant's involvement with the Site.  These covenants not to sue extend only to the Cash-1 Defendants and the Cash-1/R Defendants and do not

1  extend to any other person.

2    B.  De Minimis Covenants Not to Sue by the State
         for the Cash-2 and the Cash-2/R Defendants
3        ("Tier 2" Covenants)

4       1.  In consideration of the actions that will

5  be performed and the payments that will be made by the

6  Cash-2 Defendants and the Cash-2/R Defendants under the

7  terms of this Consent Decree, and except as

8  specifically provided in Subparagraphs XV.B.2, XV.B.3,

9  and XV.B.4 of this Section and in Section XVII

10  (Reservations of Rights, page 58), the State Covenant

11  Providers covenant not to sue or to take administrative

12  action against the Cash-2 Defendants and the Cash-2/R

13  Defendants pursuant to Section 107 of CERCLA, Section

14  7003 of RCRA, California Civil Code Section 3494, HWCL,

15  or the HSAA for Matters Addressed in this Consent

16  Decree.  With respect to present and future liability,

17  these covenants not to sue shall take effect as to each

18  Cash-2 Defendant or Cash-2/R Defendant upon the receipt

19  by EPA of the entire payment required of that Cash-2

20  Defendant or Cash-2/R Defendant under Subparagraph

21  VIII.B.1 (page 31) of Section VIII (Payment of Response

22  Costs).  With respect to each Cash-2 Defendant or

23  Cash-2/R Defendant, individually, these covenants not

24  to sue are conditioned upon (1) the satisfactory

25  performance by that Defendant of all of its obligations

26  under this Consent Decree and (2) the veracity of the

27  information provided to EPA by that Defendant relating

28  to that Defendant's involvement with the Site.  These

                           49

1  covenants not to sue extend only to the Cash-2

2  Defendants and the Cash-2/R Defendants and do not

3  extend to any other person.

4        2.   <u>The State's Pre-certification Reservations</u>

5  <u>as to the Cash-2 and the Cash-2/R Defendants</u>.

6  Notwithstanding any other provision of this Consent

7  Decree, subject to federal preemption law, the State

8  reserves, and this Consent Decree is without prejudice

9  to, any rights that the State may have under applicable

10  law to institute proceedings in this action or in a new

11  action, or to issue an administrative order seeking to

12  compel the Cash-2 and the Cash-2/R Defendants

13      a)  to perform further response actions not

14  inconsistent with the NCP relating to the Site, or

15      b)  to reimburse DTSC for additional costs of

16  response if, prior to Certification of Completion of

17  the Remedial Action:

18        1)  conditions at the Site, previously unknown

19  to the State, are discovered, or

20        2)  information, previously unknown to the

21  State, is received, in whole or in part,

22  and the State determines that these previously unknown

23  conditions or information together with any other

24  relevant information indicates that further response

25  actions are necessary to protect human health or the

26  environment.

27

28

1    3.   The State's Post-certification
Reservations as to the Cash-2 and the Cash-2/R
2 Defendants.

3 Notwithstanding any other provision of this Consent

4 Decree, subject to federal preemption law, the State

5 reserves, and this Consent Decree is without prejudice

6 to, any rights that the State may have under applicable

7 law to institute proceedings in this action or in a new

8 action, or to issue an administrative order seeking to

9 compel the Cash-2 and the Cash-2/R Defendants

10    a) to perform further response actions not

11 inconsistent with the NCP relating to the Site, or

12    b) to reimburse the State for additional costs of

13 response if, subsequent to Certification of Completion

14 of the Remedial Action:

15       1) conditions at the Site, previously unknown

16 to the State, are discovered, or

17       2) information, previously unknown to the

18 State, is received, in whole or in part,

19 and the State determines that these previously unknown

20 conditions or this information together with other

21 relevant information indicate that further response

22 actions are necessary to protect human health or the

23 environment.

24    4.   The State's Reservations with Respect to

25 Natural Resource Damages.   Notwithstanding any other

26 provision of this Consent Decree, the State Covenant

27 Providers reserve, and this Consent Decree is without

28 prejudice to, the right to institute proceedings

51

against the Cash-2 Defendants and the Cash-2/R
Defendants in this action or in a new action, to seek
relief for injury to, destruction of, or loss of
Natural Resources, if:

> (I) conditions at the Site, previously unknown
> to EPA or the State, are discovered, or
>
> (ii) information, previously unknown to EPA or
> the State, is received, in whole or in
> part,

and these previously unknown conditions or information
together with any other relevant information indicates
that the damages to Natural Resources resulting from
the contamination of the Site are significantly greater
than those previously known to EPA or the State.

> 5. For purposes of Subparagraphs XV.B.2 and
XV.B.4 of this Section, the information and the
conditions known to the State shall include only that
information and those conditions known to the State as
of the date the ROD was signed and set forth in the
Record of Decision for the Site and the administrative
record supporting the Record of Decision. For purposes
of Subparagraph XV.B.3 of this Section, the information
and the conditions known to the State shall include
only that information and those conditions known to the
State as of the date of Certification of Completion of
the Remedial Action and set forth in the Record of
Decision, the administrative record supporting the
Record of Decision, the post-ROD administrative record,

1   or in any information received by the State pursuant to

2   the requirements of the Third Decree or the Eighth

3   Decree prior to Certification of Completion of the

4   Remedial Action.

5       C.  Covenants Not to Sue by the State for Matters
            Addressed in the First and Third Decrees

6           1.  In consideration of the actions that will

7   be performed and the payments that will be made by the

8   Cash-1/R Defendants and the Cash-2/R Defendants under

9   the terms of this Consent Decree, and except as

10  specifically provided for in Subparagraphs XV.C.3 and

11  XV.C.4 of this Section and in Section XVII(Reservations

12  of Rights, page 58), the State Covenant Providers

13  covenant not to sue or to take administrative action

14  against the Cash-1/R Defendants and the Cash-2/R

15  Defendants pursuant to Section 107 of CERCLA, Section

16  7003 of RCRA, California Civil Code Section 3494 or the

17  HSAA for the Matters Addressed in the First Decree and

18  for the Matters Addressed in the Third Decree.

19          2.  As to the Cash-1/R and the Cash-2/R

20  Defendants, these covenants not to sue shall take

21  effect as to each Cash-1/R Defendant or Cash-2/R

22  Defendant upon the receipt by EPA of the entire payment

23  required of that Cash-1/R Defendant or Cash-2/R

24  Defendant under Subparagraph VIII.B.1 (page 31) of

25  Section VIII (Payment of Response Costs).  With respect

26  to each Defendant individually, these covenants not to

27  sue are conditioned upon:  (1) the satisfactory

28  performance by that Defendant of all of its obligations

53

1   under this Consent Decree; and (2) the veracity of the
2   information provided to EPA by that Defendant relating
3   to that Defendant's involvement with the Site.   These
4   covenants not to sue extend only to the Cash-1/R
5   Defendants and the Cash-2/R Defendants and do not
6   extend to any other person.
7        3.   The State's Pre-certification Reservations
8   as to the Matters Addressed in the Third Decree   .
9   Notwithstanding any other provision of this Consent
10  Decree, subject to federal preemption law, the State
11  reserves, and this Consent Decree is without prejudice
12  to, any rights that the State may have under applicable
13  law to institute proceedings in this action or in a new
14  action, or to issue an administrative order seeking to
15  compel the Cash-1/R and the Cash-2/R Defendants
16     a) to perform further response actions not
17  inconsistent with the NCP relating to the Site, or
18     b) to reimburse DTSC for additional costs of
19  response if, prior to Certification of Completion of
20  the Remedial Action:
21          1) conditions at the Site, previously unknown
22  to the State, are discovered, or
23          2) information, previously unknown to the
24  State, is received, in whole or in part,
25  and the State determines that these previously unknown
26  conditions or information together with any other
27  relevant information indicates that further response
28  actions are necessary to protect human health or the

1  environment.

2          4.  <u>The State's Post-certification</u>

3  <u>Reservations as to the Matters Addressed in the Third</u>

4  <u>Decree.</u>  Notwithstanding any other provision of this

5  Consent Decree, subject to federal preemption law, the

6  State reserves, and this Consent Decree is without

7  prejudice to, any rights that the State may have under

8  applicable law to institute proceedings in this action

9  or in a new action, or to issue an administrative order

10  seeking to compel  the Cash-1/R and the Cash-2/R

11  Defendants

12      a) to perform further response actions not

13  inconsistent with the NCP relating to the Site, or

14      b) to reimburse the State for additional costs of

15  response if, subsequent to Certification of Completion

16  of the Remedial Action:

17          1) conditions at the Site, previously unknown

18  to the State, are discovered, or

19          2) information, previously unknown to the

20  State, is received, in whole or in part,

21  and the State determines that these previously unknown

22  conditions or this information together with other

23  relevant information indicate that further response

24  actions are necessary to protect human health or the

25  environment.

26          5.  For the purposes of Subparagraph XV.C.3 of

27  this Consent Decree, the information and conditions

28  known to EPA or the State shall include only that

<div align="center">55</div>

1  information and those conditions known to EPA or the

2  State as of the date the Final ROD was signed and set

3  forth in the Final ROD for the Site and the

4  administrative record supporting the Final ROD.  For

5  purposes of Subparagraph XV.C.4 of this Section, the

6  information and the conditions known to EPA or the

7  State shall include only that information and those

8  conditions known to EPA or the State as of the date of

9  Certification of Completion of the Remedial Action and

10  set forth in the Final ROD, the administrative record

11  supporting the Final ROD, the post-ROD administrative

12  record (if any), or in any information received by EPA

13  or the State pursuant to the requirements of the Third

14  Decree or of the Eighth Decree prior to Certification

15  of Completion of the Remedial Action.

16      D.   This Section XV is not, and shall not be

17  construed as, a covenant not to sue any Defendant that

18  does not fulfill its obligations arising out of this

19  Consent Decree, or any other person or entity not a

20  Party to this Consent Decree.

21      E.   State Assertion of Reserved Rights

22      Notwithstanding the other provisions of this

23  Section XV, the State reserves the following rights:

24      1.   In the event that the State is designated

25  the lead agency at the Site pursuant to a cooperative

26  agreement with EPA or pursuant to any provision of

27  federal law, the State may assert the rights reserved

28  by the United States in Paragraphs XIII.B, XIII.C,

56

1  XIV.C, and XIV.D, in accordance with applicable law.

2      2.   In the event that the United States

3  institutes proceedings or an administrative action

4  pursuant to its reservation of rights in Paragraphs

5  XIII.B, XIII.C, XIV.C, and XIV.D, the State reserves

6  the right (i) to participate in those proceedings to

7  the extent allowed by law and (ii) to seek relief and

8  cost recovery subject to the conditions and limitations

9  set forth in Paragraphs XIII.B, XIII.C,  XIV.C, and

10 XIV.D.

11 **XVI.**          **Covenant Conditions**

12     A.   Notwithstanding any other provision in this

13 Consent Decree, the covenants not to sue from the

14 United States and the State Covenant Providers shall

15 extend only to the signatory Defendant and shall not

16 extend to any subsidiary, division, or affiliated

17 entity whose volume is not currently included in the

18 volume attributed to that signatory Defendant as set

19 forth in Appendix B, Ninth Partial Consent Decree

20 Volumetric List.

21     1.   The name of each subsidiary, division, and

22 affiliated entity on whose behalf the Defendant(s) have

23 elected to settle is set forth in Appendix A hereto,

24 together with the category of covenants applicable

25 thereto (i.e., Cash-1, Cash-1/R, Cash-2, Cash-2/R).

26     2.   The payments listed in Appendix A include

27 the amounts to be paid by each Defendant for listed

28 subsidiaries, divisions, and affiliated entities on

57

1 whose behalf that Defendant has elected to settle.

2        3.  For the purposes of the implementation of

3 this Consent Decree, upon receipt of payment of the

4 amounts set forth in Appendix A, each identified

5 subsidiary, division or affiliated entity listed in

6 Appendix A shall have the same rights and obligations

7 as a Defendant under this Consent Decree of the

8 category designated in Appendix A (Cash-1, Cash- 1/R,

9 Cash-2, or Cash-2/R).

10        4.  Nothing in this Paragraph XVI shall be

11 deemed to grant a covenant not to sue to any person or

12 entity that is not listed on Appendix A.

13     B.  In no case shall any Defendant be entitled to a

14 refund or to assert a claim against the Superfund under

15 Sections 106(b)(2), 111, 112 or 113 of CERCLA for any

16 amount paid, or work performed, under this Consent

17 Decree.

18 **XVII.**       **Reservation of Rights**

19     A.  <u>United States' Reservations of Rights</u>

20     The covenants not to sue by the United States in

21 Section XII (Covenants Not to Sue by the United States

22 for the Cash-1 and Cash-1/R Defendants ("Tier 1"

23 Covenants), page 38) Section XIII (Covenants Not to Sue

24 by the United States for the Cash-2 and Cash-2/R

25 Defendants ("Tier 2" Covenants), page 39), and Section

26 XIV (Covenants Not to Sue for Matters Addressed in the

27 First and Third Decrees, page 43) do not pertain to any

28 matters other than those expressly specified therein.

The United States reserves, and this Consent Decree is without prejudice to, all rights against the Defendants with respect to all other matters, including, but not limited to, the following:

    (1)  claims based on a failure by the Defendants to meet a requirement of this Consent Decree;

    (2)  liability arising from the past, present, or future disposal, release, or threat of release of Waste Materials outside of the Site (except as such disposal, release, or threat of release is addressed by the Eighth Decree);

    (3)  liability based upon the ownership or operation of the Site, or upon the Defendants' transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of Waste Materials at or in connection with the Site, other than as provided in the ROD, the Work, or otherwise ordered by EPA; after signature of this Consent Decree by the Defendants;

    (4)  criminal liability;

    (5)  liability for violations of federal or state law that occur during or after implementation of the Remedial Action; and

59

1          (6)  except as provided in the Third Decree and

2                  in this Consent Decree, liability for the

3                  Matters Addressed in the Third Decree.

4    B.  The United States reserves all its rights to

5  take response actions at the Site, including the right

6  to take response action in the event of a breach of the

7  terms of the Eighth Decree and to seek recovery of

8  costs that:  (1) result from such a breach; (2) relate

9  to any portion of the Work funded or performed by the

10  United States; or (3) are enforcement costs incurred by

11  the United States associated with the Site.

12    C.  <u>The State's General Reservations of Rights</u>

13      The State's covenants not to sue set forth in this

14  Consent Decree do not pertain to any matters other than

15  those expressly specified therein.  The State reserves,

16  and this Consent Decree is without prejudice to, all

17  rights against the Defendants with respect to all other

18  matters, including, but not limited to, the following:

19          (1)  claims based on a failure by the

20                  Defendants to meet a requirement of this

21                  Consent Decree;

22          (2)  liability arising from the past, present,

23                  or future disposal, release, or threat of

24                  release of Waste Materials outside of the

25                  Site (except as such disposal, release, or

26                  threat of release is addressed by the

27                  Eighth Decree);

28

       (3)  liability based upon the ownership or
operation of the Site, or upon the
Defendants' transportation, treatment,
storage, or disposal, or the arrangement
for the transportation, treatment,
storage, or disposal of Waste Materials at
or in connection with the Site, other than
as provided in the ROD, the Work, or
otherwise ordered by EPA;
after signature of this Consent Decree by
the Defendants;

       (4)  criminal liability;

       (5)  liability for violations of federal or
state law that occur during or after
implementation of the Remedial Action; and

       (6)  except as provided in the Third Decree and
in this Consent Decree, liability for the
Matters Addressed in the Third Decree.

In addition, the State of California reserves, and this
Consent Decree is without prejudice to, all rights
against the Defendants with respect to claims by any
agency or agent of the State of California other than
DTSC or the State Accounts, except to the extent that
another agency of the State of California becomes DTSC's
successor-in-interest with respect to the Matters
Addressed in this Consent Decree.

      D.   The State reserves all its rights to take
response actions at the Site, including the right to

take response action in the event of a breach of the
terms of the Eighth Decree and to seek recovery of costs
that:   (1) result from such a breach; (2) relate to any
portion of the Work funded or performed by the State; or
(3) are enforcement costs incurred by the State
associated with the Site.

E.   This Consent Decree does not waive any rights
or authority EPA may have with respect to the Site,
including, but not limited to, EPA's right to claim that
State actions taken pursuant to this Consent Decree are
in conflict with CERCLA or other federal law, or would
interfere with the remedy selected by EPA, would stand
as an obstacle to the purpose or objectives of CERCLA,
or are otherwise preempted by law.

F.   Nothing in this Consent Decree constitutes a
covenant not to sue or to take action or otherwise
limits the ability of the United States, including, but
not limited to, EPA, or the State of California,
including, but not limited to, DTSC and the State
Accounts, to seek or obtain further relief from any
Defendant if information not currently known to EPA or
the State is discovered that indicates such Defendant no
longer qualifies as a *de minimis* party at the Site
because the Defendant contributed five (5) million
gallons or more of materials containing hazardous
substances at the Site, or contributed wastes that are
significantly more toxic or are of significantly greater
hazardous effect than other hazardous substances at the

1 Site.

2 **XVIII.** **Covenants by the Defendants**

3    A.    The Defendants waive any right they might

4 have to initiate a challenge to the dollar amount

5 specified for stipulated penalties set out in Section X

6 (Stipulated Penalties, page 29) of this Consent Decree.

7    B.  <u>The Defendants' Covenant Not to Sue the United</u>

8 <u>States</u>

9    Subject to the reservations in Paragraph XVIII.D of

10 this Section, the Defendants hereby covenant not to sue

11 and agree not to assert any claims or causes of action

12 against the United States with respect to the Matters

13 Addressed in this Consent Decree, or this Consent

14 Decree, including, but not limited to:

15      1.   any direct or indirect claim for

16 reimbursement from the EPA Hazardous Substance Superfund

17 (established pursuant to the Internal Revenue Code, 26

18 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107,

19 111, 112, 113 or any other provision of law;

20      2.   any claim arising out of response actions

21 at the Site, including any claim under the United States

22 Constitution, the Constitution of the State of

23 California, the Tucker Act, 28 U.S.C. § 1491, the Equal

24 Access to Justice Act, 28 U.S.C. § 2412, as amended, or

25 at common law;

26      3.   any claims against the United States,

27 including any department, agency or instrumentality of

28 the United States under CERCLA Sections 107 or 113

1  related to the Site;

2          4.   any claims arising out of response
3  activities at the Site, including claims based on EPA's
4  selection of response actions, oversight of response
5  activities or approval of plans for such activities;

6          5.   any claims arising under Paragraph H of
7  Section XVIII (Reservation of Rights) of the First
8  Decree, including, but not limited to, claims for
9  reduction, credit, offset, or reimbursement;

10         6.   any direct or indirect claim for
11  disbursement from the OII Special Account or the OII
12  Disbursement Special Account.

13    C.   The Defendants' Covenant Not to Sue the State
14         Subject to the reservations in Paragraph XVIII.D of
15  this Section, the Defendants hereby covenant not to sue
16  and agree not to assert any claims or causes of action
17  against any of the State Covenant Providers with respect
18  to the Matters Addressed in this Consent Decree, or this
19  Consent Decree, including, but not limited to:

20         1.   any direct or indirect claim for
21  reimbursement from the State Accounts;

22         2.   any claims against any of the State
23  Covenant Providers under CERCLA Sections 107 or 113 or
24  Health and Safety Code Sections 25300   et seq. related to
25  the Site; or

26         3.   any claims arising out of response
27  activities at the Site, including claims based on the
28  selection of response actions, oversight of response

1  activities or review or approval of plans for such
2  activities.
3      D.   Reservations by Defendants
4      Except as provided in this Consent Decree, the
5  Defendants reserve, and this Consent Decree is without
6  prejudice to:
7           1.   Any and all rights of contribution against
8  any or all persons who are not Defendants as defined
9  herein for all costs incurred by the Defendants under
10 this Consent Decree or otherwise in complying with the
11 requirements of this Consent Decree.
12           2.   Contribution claims against the Department
13 of the Navy in the event any claim is asserted by the
14 United States or the State against the Defendants under
15 the authority of or under Paragraphs XIII.B,  XIII.C, or
16 XIII.D of Section XIII (De Minimis Covenants Not to Sue
17 by the United States for the Cash-2 and the Cash-2/R
18 Defendants ("Tier 2" Covenants)) of this Decree, or
19 Paragraphs XVII.A.2, XVII.A.3, XVII.C.2, or XVII.C.3
20 (Reservations of Rights) of this Decree, but only to the
21 same extent and for the same matters, transactions, or
22 occurrences as are raised in the claim of the United
23 States or the State against the Defendants.
24     E.   Nothing in this Consent Decree shall be deemed
25 to constitute preauthorization of a claim within the
26 meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or
27 40 C.F.R. § 300.700(d).
28

65

F.   The Defendants agree not to assert any claims and to waive all claims or causes of action they may have for all matters relating to the Site, including, but not limited to, for contribution, against any person where the person's liability to the Defendants with respect to the Site is based solely on having arranged for disposal or treatment, or for transport for disposal or treatment, of hazardous substances at the Site, or having accepted for transport for disposal or treatment of hazardous substances at the Site, if EPA determines that: (i) any materials contributed by such person to the Site constituting MSW or MSS did not exceed 0.2% of the total volume of waste at the Site; and (ii) any materials contributed by such person to the Site containing hazardous substances, but not constituting MSW or MSS, did not exceed 2,100 gallons of liquid materials, or the equivalent using EPA's conversion factors.  This waiver shall not apply to any claim or cause of action against any person meeting the above criteria if EPA has determined that the materials contributed to the Site by such person contributed or could contribute significantly to the costs of response at the Site.  This waiver also shall not apply with respect to any defense, claim, or cause of action that a Defendant may have against any person if such person asserts a claim or cause of action relating to the Site against such Defendant.

66

G. The Defendants agree not to assert any claims and to waive all claims or causes of action that they may have for all matters relating to the Site, including, but not limited to, for contribution, against any person that has entered into a final CERCLA § 122(g) *de minimis* settlement with EPA, including the Defendants under this Consent Decree and the Cash Defendants under the Eighth Decree, with respect to the Site as of the effective date of this Consent Decree. This waiver shall not apply with respect to any defense, claim, or cause of action that a Defendant may have against any person if such person asserts a claim or cause of action relating to the Site against such Defendant.

**XIX. Certification of Completion**

A. Completion of the Remedial Action Work Under the Eighth Decree

1. The certification which shall constitute the Certification of Completion of the Remedial Action for purposes of this Consent Decree, including, but not limited to, Section XIII (Covenants Not to Sue by the United States for the Cash-2 and Cash-2/R Defendants ("Tier 2" Covenants), page 39) and Section XV (Covenants by the State of California, page 47) is the Certification of Completion provided for in Paragraph A of Section XXXVI of the Eighth Decree. Certification of Completion of the Remedial Action shall not affect the Defendants' obligations under this Consent Decree.

XX.          **Form of Notice**

A.   Subject to Paragraph XVI.H (page 72 of Section XVI, Data Exchange:  Sampling and Analysis) of the Eighth Decree, any Defendant may obtain from EPA, upon written request, a copy of any or all communications between the Work Defendants or the Contractor(s) and EPA and the State made pursuant to the Eighth Consent Decree.  The cost of copying any such material shall be borne by the Defendant making the request.

B.   When notification to or communication with the United States, EPA, or the State is required by the terms of this Consent Decree, it shall be in writing, postage prepaid, and addressed as follows:

As to the United States :

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
Department of Justice
P.O. Box 7611
Washington, DC  20044-7611
Re:  DJ # 90-11-2-156/12

As to EPA:

EPA Project Coordinator - OII Site
Superfund Site Cleanup Branch (SFD-7-4)
U.S. Environmental Protection Agency, Region IX
75 Hawthorne St.
San Francisco, CA  94105

Assistant Regional Counsel - OII Site
Office of Regional Counsel (ORC-3)
U.S. Environmental Protection Agency, Region IX
75 Hawthorne St.
San Francisco, CA  94105

As to the Regional Superfund Accounting Program :

Financial Management Officer (MTS-4-2)
U.S. Environmental Protection Agency, Region IX
75 Hawthorne St.
San Francisco, CA  94105

<u>As to the State</u>:

Department of Toxic Substances Control
Attention:  OII Project Coordinator
Department of Toxic Substances Control
1011 Grandview Avenue
Glendale, CA  91201

C.   When notification to or communication with a Defendant is required by the terms of this Consent Decree, it shall be in writing, postage prepaid, and addressed to the Agent identified by the Defendant on its signature page attached to this Consent Decree pursuant to Section XXVIII (page 74) (Representative Authority).  Any Defendant may change the identity or contact information for its agent at any time by written notice to the Court and to the parties specified in Paragraph XX.B above, but need not provide such notice to all other Defendants.  Each Defendant hereby waives notice of such changes submitted by other Defendants.

XXI.                    **Contribution Protection**

A.   The Parties agree, and by entering this Consent Decree this Court finds, that the Defendants are entitled, as of the effective date of this Consent Decree, to protection from contribution actions or claims as provided by CERCLA Section 113(f)(2), 42 U.S.C. §  9613(f)(2), and applicable state law, for Matters Addressed in this Consent Decree.  Nothing in this Section shall constitute or be construed as releasing or providing any covenant not to sue or contribution protection with respect to any matter

69

1  addressed by this Consent Decree to any person or entity
2  not a Defendant, or to any Defendant that has defaulted
3  on its obligations under this Consent Decree.  Nothing
4  in this Section shall be deemed to waive any other right
5  to contribution protection that the Defendants may have.
6     B.   Each Defendant's right to contribution
7  protection under this Section shall remain in effect
8  against all other persons, provided such Defendant has
9  not defaulted on any obligation under this Consent
10 Decree, whether or not any other Defendant has fully
11 performed its obligations under this Consent Decree.
12    C.   The Parties to this Consent Decree agree that
13 while the United States, EPA, the State and State
14 Accounts may support the applicability of this Section
15 XXI based upon the existence of this Consent Decree,
16 neither the United States, nor EPA nor the State nor the
17 State Accounts shall be under any obligation to support
18 the Defendants in any way in any action for contribution
19 brought by or against the Defendants that alleges
20 liability for Matters Addressed in this Consent Decree.
21    D.   Each Defendant agrees that, with respect to any
22 suit or claim for contribution brought by it for matters
23 related to this Consent Decree, it will notify EPA, DOJ,
24 and the State in writing no later than 60 days prior to
25 the initiation of such suit or claim.  Each Defendant
26 also agrees that, with respect to any suit or claim for
27 contribution brought against it for matters related to
28 this Consent Decree, it will notify EPA, DOJ, and the

1  State in writing within 10 days of service of the
2  complaint or claim upon it.  In addition, each Defendant
3  shall notify EPA, DOJ, and the State within 10 days of
4  service or receipt of any Motion for Summary Judgment,
5  and within 10 days of receipt of any order from a court
6  setting a case for trial, for matters related to this
7  Consent Decree.

8  **XXII.       The Defendants' Right of Contribution and**
9  **Indemnity and Covenant Not to Sue Each**
   **Other**

10      A.   Except as provided in this Consent Decree, each
11  Defendant shall retain all rights under statutory or
12  common law to seek contribution or indemnification
13  against any and all other persons or entities not party
14  to this Consent Decree.

15      B.   Except as provided in this Paragraph, to the
16  extent any Defendant has complied with its obligations
17  under this Consent Decree, no rights as to Matters
18  Addressed in this Consent Decree are retained against
19  such Defendant by any other Defendant and such rights
20  are hereby expressly waived, released and discharged
21  with regard to such Defendant.

22      C.   For and in consideration of the mutual
23  covenants and promises of the Defendants made in this
24  Consent Decree, each Defendant hereby covenants not to
25  sue or otherwise assert any claim against any other
26  Defendant for reimbursement of any payment made pursuant
27  to this Consent Decree, except to enforce any allocation
28  of costs made pursuant to such agreement.

71

1  **XXIII.         Waiver of Claim-splitting Defense**

2       All Parties recognize and acknowledge that the

3  settlement embodied in this Consent Decree is only a

4  partial resolution of issues related to the remediation

5  of conditions at the Site.  The Defendants hereby waive

6  the defenses of  <u>res judicata</u>, collateral estoppel, and

7  claim-splitting by the Plaintiffs, only with respect to

8  the Plaintiffs' ('s) right to pursue subsequent

9  litigation regarding the Defendants' responsibility for

10 phases of Site work and costs not covered by this

11 Consent Decree.

12 **XXIV.         Lodging and Public Participation**

13      A.   As required by Section 122(d)(2) of CERCLA, 42

14 U.S.C. § 9622(d)(2), Section 7003(d) of RCRA, 42 U.S.C.

15 § 6973(d), and 28 C.F.R. § 50.7, this Consent Decree

16 will be lodged with the Court.  The United States shall

17 publish notice of availability of this Consent Decree

18 for review to allow public comment on this Consent

19 Decree prior to its entry by the Court.

20      B.   The United States will provide persons who are

21 not Parties to the proposed settlement with the

22 opportunity to file written comments during a thirty

23 (30) Day period following such notice.  Commenters may

24 request an opportunity for a public hearing in the

25 affected area, in accordance with Section 7003(d) of

26 RCRA, 42 U.S.C. § 6973(d).  The United States will file

27 with the Court a copy of any comments received and its

28 responses to such comments.

1      C.   The United States reserves the right to
2  withdraw or withhold its consent to entry of this
3  Consent Decree if the comments regarding this Consent
4  Decree disclose facts or considerations that indicate
5  that the Consent Decree is inappropriate, improper or
6  inadequate, or that this Consent Decree should be
7  modified as required by Section 122(d)(2) of CERCLA, 42
8  U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7.  If a
9  modification is deemed necessary by the United States
10 based on public comments, the United States will notify
11 the Defendants.  The Defendants consent to the entry of
12 this Consent Decree without further notice.

13     D.   Except as otherwise provided in this Consent
14 Decree, no Party shall be bound by modifications to this
15 Consent Decree without its prior written consent.

16 **XXV.          Other Claims**

17     Nothing in this Consent Decree shall be deemed to
18 constitute a preauthorization of a CERCLA claim within
19 the meaning of Sections 111 or 112 of CERCLA or 40
20 C.F.R. § 300.700(d).  In consideration of the entry of
21 this Consent Decree, the Defendants agree not to make
22 any claims pursuant to Sections 111, 112 or 106(b)(2) of
23 CERCLA, 42 U.S.C. §§ 9611, 9612, 9606(b)(2), or any
24 other provision of law directly or indirectly against
25 the EPA Hazardous Substance Superfund, or make other
26 claims against the United States or the State for those
27 costs expended in connection with this Consent Decree.

28

1   **XXVI.          Continuing Jurisdiction**

2       The Court specifically retains jurisdiction over
3   both the subject matter of and the Parties to this
4   action for the duration of this Consent Decree for the
5   purposes of issuing such further orders or directions as
6   may be necessary or appropriate to construe, implement,
7   modify, enforce, terminate, or reinstate the terms of
8   this Consent Decree or for any further relief as the
9   interest of justice may require.

10  **XXVII.          Integration/Appendices**

11      This Consent Decree and its appendices constitute
12  the final, complete and exclusive agreement and
13  understanding among the Defendants with respect to the
14  settlement embodied in this Consent Decree.   The Parties
15  acknowledge that there are no representations,
16  agreements or understandings relating to the settlement
17  other than those expressly contained in this Consent
18  Decree.   The following appendices are attached to and
19  incorporated into this Consent Decree:   "Appendix A" is
20  the complete list of the Defendants and schedule of
21  payments to be made by them;   [and] "Appendix B" is the
22  Ninth Partial Consent Decree Volumetric List; and
23  "Appendix C" is the Contaminants List.

24  **XXVIII.          Representative Authority**

25      A.   Each undersigned representative of a Party to
26  this Consent Decree certifies that he or she is fully
27  authorized by the Party to enter into and execute the
28  terms and conditions of this Consent Decree and to

1  legally bind such Party and each subsidiary, division or
2  affiliated entity listed on its signature page to this
3  Consent Decree.

4       B.    Each Defendant shall identify, on the attached
5  signature page, the name and address of an agent who is
6  authorized to accept service of process by mail on
7  behalf of that Defendant with respect to all matters
8  arising under or relating to this Consent Decree.

9       C.    The Defendants hereby agree to accept service
10 in the manner set forth in this Section and to waive the
11 formal service requirements set forth in Rule 4 of the
12 Federal Rules of Civil Procedure and any applicable
13 local rules of this Court, including, but not limited
14 to, service of a summons.

15 **XXIX.          Effective Date**

16      This Consent Decree is effective upon the date of
17 its entry by the Court.

18 **XXX.          Severability**

19      If any provision or authority of this Consent
20 Decree or the application of this Consent Decree to any
21 circumstance is held by the Court to be invalid, the
22 application of such provision to other circumstances and
23 the remainder of this Consent Decree shall remain in
24 force and shall not be affected thereby.

25 **XXXI.          Termination and Satisfaction**

26      Upon full payment of all its obligations under
27 Section VIII (Payment of Response Costs, page 31) and
28 Appendix A, each Defendant shall have satisfied its

1  obligations for Matters Addressed in this Consent
2  Decree, and this Consent Decree shall be terminated as
3  to that Defendant, except for the provisions of Section
4  VII (Retention of Records, page 25), Section XII
5  (Covenants Not to Sue by the United States for the
6  Cash-1 and Cash-1/R Defendants, page 38), Section XIII
7  (Covenants Not to Sue by the United States for the
8  Cash-2 and Cash-2/R Defendants, page 38), Section XIV
9  (Covenants Not to Sue for Matters Addressed in the First
10 and Third Decrees, page 38), Section XV (Covenants by
11 the State of California, page 41), Section XVI (Covenant
12 Conditions, page 50), Section XVII (Reservation of
13 Rights, page 51), Section XVIII (Covenants by the
14 Defendants, Page 55), Section XXI (Contribution
15 Protection, page 61), and such other continuing rights
16 and obligations of that Defendant under this Consent
17 Decree.

18 **XXXII.          Section Headings**

19      The Section, Paragraph and Subparagraph headings
20 set forth in this Consent Decree and, with respect to
21 the Section headings, set forth in its table of contents
22 are included for convenience of reference only, and are
23 not intended to supersede any other provisions of this
24 Consent Decree.  In the event of any conflict between
25 the Section, Paragraph or Subparagraph headings and any
26 terms contained in the body of this Consent Decree, the
27 text in the body of the Consent Decree shall control.

28

**XXXIII.        Counterparts**

This Consent Decree may be executed and delivered in any number of counterparts, each of which when executed and delivered shall be deemed to be an original, but such counterparts shall together constitute one and the same document.

**XXXIV.        Final Judgment**

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute the final judgment between and among the United States, the State, and the Defendants.  The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS **23** DAY OF _March_, 20_10_.

_United States District Judge_

# NINTH PARTIAL CONSENT DECREE SIGNATURE PAGE

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States of America et al. v. Ameron International Corporation, et al., relating to the Operating Industries, Inc. (OII) Superfund Site.

FOR THE UNITED STATES OF AMERICA

_____
ELLEN M. MAHAN
Date
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources
Division
U.S. Department of Justice
Washington, D.C.    20530

11/23/09
_____
AMY R. GILLESPIE
Date
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources
Division
U.S. Department of Justice
Washington, D.C.    20530

FOR THE UNITED STATES OF AMERICA

8/10/09
Date

KEITH A. TAKATA
Director, Superfund Division
U.S. Environmental Protection Agency
Region IX
75 Hawthorne Street
San Francisco, California  94105

August 5, 2009
Date

THOMAS B. BUTLER
Assistant Regional Counsel, Region IX
U.S. Environmental Protection Agency
75 Hawthorne Street
San Francisco, California  94105

1
2
3 **FOR THE STATE OF CALIFORNIA**

7/2/09
Date

STEVEN W. LAVINGER
Performance Manager
Chatsworth Office Cleanup Program
California Department of Toxic
Substances Control
9211 Oakdale Avenue
Chatsworth, California 91311-6505

July 3, 2009
Date

DENNIS A. RAGEN
Deputy Attorney General
110 West A Street, Suite 1100
San Diego, California  92101

OII Site: Ninth Partial Consent Decree                    Page 71

80

NINTH PARTIAL CONSENT DECREE SIGNATURE PAGE

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. _____, et. al, relating to the Operating Industries, Inc. (OII) Superfund Site.

SETTLING PARTY'S NAME:   AMERON INTERNATIONAL CORPORATION

SETTLING ON BEHALF OF THE FOLLOWING GENERATORS APPEARING IN EPA'S VOLUMETRIC DATABASE:

Ameron Steel, Ameron, Inc., Ameron Pipe, Ameron Steel & Wire

SELECT ONE SETTLEMENT OPTION:            Settlement Payment

☒   Cash-1 Option                        $993,688
☐   Cash-2 Option                        $922,711

August 18, 2008         _____
   Date                     Signature

Stephen E. Johnson          Senior Vice-President
PRINTED NAME OF SIGNATORY     TITLE OF SIGNATORY
245 S. Los Robles Avenue    (626) 683-4000
ADDRESS                     TELEPHONE NUMBER
Pasadena, CA 91101-3638     (626) 683-4050
CITY, STATE, ZIP CODE         FACSIMILE NUMBER
stephen_johnson@Ameron.com
EMAIL ADDRESS

Agent* Authorized to Accept Service and Future Notices on Behalf of Above-signed Party [Please Type or Print Clearly]:

Name and/or Title:   Paul Pavlis, Associate General Counsel

Address:   245 S. Robles Avenue, Pasadena, CA 91101-3638

_____

Telephone Number:   (626) 683-4000

Facsimile Number:   (626) 683-4050

Email Address:   paul.pavlis@Ameron.com

* The agent may be changed by written notice to EPA, the Court, and the parties listed in Section XX, Form of Notice.

OII Site: Ninth Partial Consent Decree              Page 72

81

1

## NINTH PARTIAL CONSENT DECREE SIGNATURE PAGE

2

3      THE UNDERSIGNED PARTY enters into this Consent Decree in
the matter of United States v. _____, et. al, relating to the

4   Operating Industries, Inc. (OII) Superfund Site.

5   **SETTLING PARTY'S NAME:   B & C PLATING COMPANY**

**SETTLING ON BEHALF OF THE FOLLOWING GENERATORS APPEARING IN**
6   **EPA'S VOLUMETRIC DATABASE:**

7
   B & C Plating Company

8   SELECT ONE SETTLEMENT OPTION:         Settlement Payment

9           ☐   Cash-1 Option              $400,467

10          ☐   Cash-2 Option              $306,240

11   _____    _G̶.D̶.W̶a̶c̶k̶e̶r̶_____

12       Date          -      Signature

13   _G.D. WACKER_____        _PARTNER_____
     PRINTED NAME OF SIGNATORY       TITLE OF SIGNATORY

14   _5520 RED SUN DR._____     _702-658-1097_____

15   ADDRESS                         TELEPHONE NUMBER

     _LAS VEGAS NV 89149_____      _N/A_____
16   CITY, STATE, ZIP CODE           FACSIMILE NUMBER

17   _N/A_____
     EMAIL ADDRESS

18
         **Agent\* Authorized to Accept Service and Future Notices on**
19   **Behalf of Above-signed Party** *[Please Type or Print Clearly]*:

20       Name and/or Title: _____

21       Address: _____

22                _____

23       Telephone Number: _____

24       Facsimile Number: _____

25       Email Address: _____

26   \* The agent may be changed by written notice to EPA, the Court, and the
     parties listed in Section XX, Form of Notice.

27

28

     **OII Site: Ninth Partial Consent Decree**              **Page** 72

**NINTH PARTIAL CONSENT DECREE SIGNATURE PAGE**

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. _____, et. al, relating to the Operating Industries, Inc. (OII) Superfund Site.

**SETTLING PARTY'S NAME:   CALIFORNIA DAIRIES, INC.**

**SETTLING ON BEHALF OF THE FOLLOWING GENERATORS APPEARING IN EPA'S VOLUMETRIC DATABASE:**

    California Milk Producers

SELECT ONE SETTLEMENT OPTION:          Settlement Payment

        ☒    Cash-1 Option              $541,959
        ☐    Cash-2 Option              $414,439

**July 24, 2008**                   _____
Date                                Signature

**J.L. Heffington**                 **Senior V.P. & C.F.O.**
PRINTED NAME OF SIGNATORY           TITLE OF SIGNATORY

**2000 N. Plaza Drive**             **(559) 625-2200**
ADDRESS                             TELEPHONE NUMBER

**Visalia, CA 93291**               **(559) 625-5433**
CITY, STATE, ZIP CODE               FACSIMILE NUMBER

**jheffington@californiadairies.com**
EMAIL ADDRESS

**Agent\* Authorized to Accept Service and Future Notices on Behalf of Above-signed Party** *[Please Type or Print Clearly]*:

Name and/or Title:   **President & C.E.O.**

Address:   **2000 N. Plaza Drive**

           **Visalia, CA 93291**

Telephone Number:   **(559) 625-2200**

Facsimile Number:   **(559) 625-5433**

Email Address:   **jheffington@californiadairies.com**

\* The agent may be changed by written notice to EPA, the Court, and the parties listed in Section XX, Form of Notice.

**OII Site: Ninth Partial Consent Decree**               **Page 72**

## NINTH PARTIAL CONSENT DECREE SIGNATURE PAGE

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. _____, *et. al*, relating to the Operating Industries, Inc. (OII) Superfund Site.

**SETTLING PARTY'S NAME:   CASEX CO.**

**SETTLING ON BEHALF OF THE FOLLOWING GENERATORS APPEARING IN EPA'S VOLUMETRIC DATABASE:**

   Casex Oil

SELECT ONE SETTLEMENT OPTION:           Settlement Payment

   ☐   Cash-1 Option              $499,058

   ☒   Cash-2 Option              $450,221

_11-14-08_                _M. J. Castro_
Date                    Signature

_M. J. CASTRO_              _Past President_
PRINTED NAME OF SIGNATORY          TITLE OF SIGNATORY

_341 Skidder Trail_            _916 203-8902_
ADDRESS                  TELEPHONE NUMBER

_Truckee, CA 96161_
CITY, STATE, ZIP CODE            FACSIMILE NUMBER

_____
EMAIL ADDRESS

   **Agent* Authorized to Accept Service and Future Notices on Behalf of Above-signed Party [Please Type or Print Clearly]:**

   Name and/or Title: _M. J. CASTRO_

   Address: _341 Skidder Trail_

   _Truckee, CA 96161_

   Telephone Number: _916 203-8902_

   Facsimile Number: _____

   Email Address: _____

* The agent may be changed by written notice to EPA, the Court, and the parties listed in Section XX, Form of Notice.

OII Site: Ninth Partial Consent Decree

**NINTH PARTIAL CONSENT DECREE SIGNATURE PAGE**

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. _____, *et. al*, relating to the Operating Industries, Inc. (OII) Superfund Site.

SETTLING PARTY'S NAME:   **ENERGY PRODUCTION & SALES CO.**

SETTLING ON BEHALF OF THE FOLLOWING GENERATORS APPEARING IN EPA'S VOLUMETRIC DATABASE:

Energy Production

SELECT ONE SETTLEMENT OPTION:              Settlement Payment

     ☒    Cash-1 Option           $723,720

     ☐    Cash-2 Option           $681,841

October 8, 2008                    *Sheldon L. Foreman*
Date                               Signature

SHELDON L. FOREMAN               General Counsel
PRINTED NAME OF SIGNATORY            TITLE OF SIGNATORY

1023 Calle Sombra #C             (949) 254-4357
ADDRESS                              TELEPHONE NUMBER

San Clemente, CA 92673           (949) 366-3803
CITY, STATE, ZIP CODE                FACSIMILE NUMBER

SLFLAW@Comcast.Net
EMAIL ADDRESS

Agent* Authorized to Accept Service and Future Notices on Behalf of Above-signed Party *[Please Type or Print Clearly]*:

Name and/or Title:   SHELDON L. FOREMAN

Address:   1023 Calle Sombra #C
           San Clemente, CA 92673

Telephone Number:   (949) 254-4357

Facsimile Number:   (949) 366-3803

Email Address:   SLFLAW@Comcast.Net

* The agent may be changed by written notice to EPA, the Court, and the parties listed in Section XX, Form of Notice.

OII Site: Ninth Partial Consent Decree                    Page 72

### NINTH PARTIAL CONSENT DECREE SIGNATURE PAGE

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. _____, et. al, relating to the Operating Industries, Inc. (OII) Superfund Site.

**SETTLING PARTY'S NAME:  Halliburton Energy Services, Inc.**[1]

**SETTLING ON BEHALF OF THE FOLLOWING GENERATORS APPEARING IN EPA'S VOLUMETRIC DATABASE:**

    Welex
    IMCO Services
    Halliburton Services
    Masoneilan International, Inc.

SELECT ONE SETTLEMENT OPTION:                    Settlement Payment

    ☐   Cash-1 Option                    $665,411
    ☒   Cash-2 Option                    $600,294

| 4/30/09 | _(signature)_ |
|---|---|
| Date | Signature |
| James W. Ferguson | Vice President & Deputy General Counsel |
| PRINTED NAME OF SIGNATORY | TITLE OF SIGNATORY |
| 1401 McKinney, Ste. 2400 | 713-759-2669 |
| ADDRESS | TELEPHONE NUMBER |
| Houston, Texas   77010 | 713-759-2610 |
| CITY, STATE, ZIP CODE | FACSIMILE NUMBER |
| James.Ferguson@Halliburton.com | |
| EMAIL ADDRESS | |

**Agent**[2] **Authorized to Accept Service and Future Notices on Behalf of Above-signed Party [Please Type or Print Clearly]:**

Name and/or Title:    **Steve Leifer**

Address:    **Baker Botts, LLP, 1299 Pennsylvania Avenue, 12th Fl.**

    **Washington, DC   20004**

Telephone Number:    **202-639-7723**

Facsimile Number:    **202-585-1040**

Email Address:    **Sleifer@BakerBotts.com**

---

[1] Halliburton International, Inc. has authorized Halliburton Energy Services, Inc. to enter into the Ninth Partial Consent Decree on behalf of Halliburton International, Inc., successor to Masoneilan International, Inc.

[2] The agent may be changed by written notice to EPA, the Court, and the parties listed in Section XX, Form of Notice.

**OII Site: Ninth Partial Consent Decree**                    **Page** 72

86

## NINTH PARTIAL CONSENT DECREE SIGNATURE PAGE

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. _____, et. al, relating to the Operating Industries, Inc. (OII) Superfund Site.

**SETTLING PARTY'S NAME:** **International Extrusion Corporation**

**SETTLING ON BEHALF OF THE FOLLOWING GENERATORS APPEARING IN EPA'S VOLUMETRIC DATABASE:**
       International Extrusion

CD-9 SETTLEMENT OFFER:              Settlement Payment

   ✓   Cash-2 Option              $182,997 less $182,997
                                   credit for amount paid

05/20/2009                    _____
Date                              Signature

MATTHEW A. JOHNSON            ATTORNEY
PRINTED NAME OF SIGNATORY      TITLE OF SIGNATORY

101 SW MAIN ST, STE 2000      (503) 227-8424
ADDRESS                       TELEPHONE NUMBER

PORTLAND OR 97204             (503) 227-8412
CITY, STATE, ZIP CODE          FACSIMILE NUMBER

matt@prgarylaw.com
EMAIL ADDRESS

**Agent\* Authorized to Accept Service and Future Notices on Behalf of Above-signed Party [Please Type or Print Clearly]:**

Name and/or Title: _____

Address: _____

_____

Telephone Number: _____

Facsimile Number: _____
Email Address: _____
\* The agent may be changed by written notice to EPA, the Court, and the parties listed in Section XX, Form of Notice.

**OII Site: Ninth Partial Consent Decree**                    **Page 72**

FEB. 6.2009   5:11PM   SAIC                                      NO.296   P.3/4

## NINTH PARTIAL CONSENT DECREE SIGNATURE PAGE

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. _____, et. al, relating to the Operating Industries, Inc. (OII) Superfund Site.

SETTLING PARTY'S NAME:    JAYBEE MANUFACTURING CORPORATION

SETTLING ON BEHALF OF THE FOLLOWING GENERATORS APPEARING IN EPA'S VOLUMETRIC DATABASE:
   Jaybee Manufacturing

ORIGINAL CD-9 SETTLEMENT OFFER:        Settlement Payment

               Cash-1 Option           $1,067,884
               Cash-2 Option           $992,945

REVISED CD-9 SETTLEMENT OFFER:         Revised Settlement
                                       Payment Based on Limited
                                       Ability to Pay

       ☒    Cash-1 Option             $500

_2 - 9 - 09_                _Hy Bt_
Date                        Signature

_HENRY BORENSTEIN_          _Resynd Presidnl_
PRINTED NAME OF SIGNATORY        TITLE OF SIGNATORY
_289 S. Robertson BLVD #400_     _818-613-3457_
ADDRESS                          TELEPHONE NUMBER

_BEVERLY HiLLs, CA. 90211_       _435-608-3457_
CITY, STATE, ZIP CODE            FACSIMILE NUMBER

_____
EMAIL ADDRESS

   Agent* Authorized to Accept Service and Future Notices on Behalf of Above-signed Party [Please Type or Print Clearly]:

   Name and/or Title:  _HENRY BORENSTEIN_

   Address:  _289 S. Robertson BLVD #400_

        _BEVERLY Hill, CA 90211_

   Telephone Number:  _818-613-3457_

   Facsimile Number:  _435-608-3457_
   Email Address:  _chenols-7@Hotmail.com_
* The agent may be changed by written notice to EPA, the Court, and the parties listed in Section XX, Form of Notice.

OII Site: Ninth Partial Consent Decree                    Page 72

**NINTH PARTIAL CONSENT DECREE SIGNATURE PAGE**

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. _____, et. al, relating to the Operating Industries, Inc. (OII) Superfund Site.

**SETTLING PARTY'S NAME:** **LUXFER, INC.**

**SETTLING ON BEHALF OF THE FOLLOWING GENERATORS APPEARING IN EPA'S VOLUMETRIC DATABASE:**

Luxfer USA

SELECT ONE SETTLEMENT OPTION:                  Settlement Payment

☒   Cash-1 Option                                $409,520

☐   Cash-2 Option                                $332,884

9/16/08                          J. M. U.
Date                             Signature

J. Michael Edwards                    VP-CFO
PRINTED NAME OF SIGNATORY              TITLE OF SIGNATORY

3016 Kansas Ave                       951.341.2393
ADDRESS                               TELEPHONE NUMBER

Riverside, CA 92507                   951.328.2735
CITY, STATE, ZIP CODE                 FACSIMILE NUMBER

Michael.Edwards@Luxfer.Net
EMAIL ADDRESS

**Agent\* Authorized to Accept Service and Future Notices on Behalf of Above-signed Party [Please Type or Print Clearly]:**

Name and/or Title:  J. Michael Edwards

Address:  3016 Kansas Ave

          Riverside, CA 92507

Telephone Number:  951.341.2393

Facsimile Number:  951.328.2735

Email Address:  Michael.Edwards@Luxfer.Net

\* The agent may be changed by written notice to EPA, the Court, and the parties listed in Section XX, Form of Notice.

**OII Site: Ninth Partial Consent Decree**                    **Page 72**

89

NINTH PARTIAL CONSENT DECREE SIGNATURE PAGE

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Princess, et. al, relating to the Operating Industries, Inc. (OII) Superfund Site.

**SETTLING PARTY'S NAME:** **PRINCESS CRUISES LIMITED**

**SETTLING ON BEHALF OF THE FOLLOWING GENERATORS APPEARING IN EPA'S VOLUMETRIC DATABASE:**

Pacific Princess
William Diamond

SELECT ONE SETTLEMENT OPTION:           Settlement Payment

☒   Cash-1 Option·                        $634,096
☐   Cash-2 Option                         $572,044

14 Aug 2008        Mona Ehrenreich
_____      _____
Date               Signature          General Counsel

Mona Ehrenreich                        _____
PRINTED NAME OF SIGNATORY              TITLE OF SIGNATORY

24305 Town Center Drive               661. 753. 1550
ADDRESS                               TELEPHONE NUMBER

Santa Clarita, CA 91355               661. 753. 1553
CITY, STATE, ZIP CODE                 FACSIMILE NUMBER

mehrenreich@princesscruises.com
EMAIL ADDRESS

**Agent\* Authorized to Accept Service and Future Notices on Behalf of Above-signed Party [Please Type or Print Clearly]:**

Name and/or Title: _____

Address: _____

_____

Telephone Number: _____

Facsimile Number: _____

Email Address: _____

\* The agent may be changed by written notice to EPA, the Court, and the parties listed in Section XX, Form of Notice.

**OII Site: Ninth Partial Consent Decree**          **Page** 72

90

## NINTH PARTIAL CONSENT DECREE SIGNATURE PAGE

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. _____, et. al, relating to the Operating Industries, Inc. (OII) Superfund Site.

**SETTLING PARTY'S NAME:**    **Thompson Drilling Company**

**SETTLING ON BEHALF OF THE FOLLOWING GENERATORS APPEARING IN EPA'S VOLUMETRIC DATABASE:**
    Thompson Drilling

ORIGINAL CD-9 SETTLEMENT OFFER:          Settlement Payment

                    Cash-1 Option          $1,649,691
                    Cash-2 Option          $1,559,912

**REVISED CD-9 SETTLEMENT OFFER:**          **Revised Settlement Payment Based on Limited Ability to Pay**

          ☐    **Cash-1 Option**          $500

01/08/2009
_____          _____
Date                    Signature

Robert Thompson                    President
PRINTED NAME OF SIGNATORY          TITLE OF SIGNATORY

28331 Las Cabos                    949-644-9292
ADDRESS                    TELEPHONE NUMBER

Laguna Niguel, CA  92677          _____
CITY, STATE, ZIP CODE          FACSIMILE NUMBER

thompsonenergy@cox.net
EMAIL ADDRESS

**Agent\* Authorized to Accept Service and Future Notices on Behalf of Above-signed Party [Please Type or Print Clearly]:**
                    Robert K. Renner; Sara A. Maunder
    Name and/or Title:  Barger & Wolen LLP

    Address:    19800 MacArthur Boulevard, Suite 800

                Irvine, California  92612

    Telephone Number:   949-757-2800

    Facsimile Number:   949-752-6313
    Email Address: rrenner@bargerwolen.com; smaunder@bargerwolen.com
\* The agent may be changed by written notice to EPA, the Court, and the parties listed in Section XX, Form of Notice.

**OII Site: Ninth Partial Consent Decree**                    **Page 72**

1

## NINTH PARTIAL CONSENT DECREE SIGNATURE PAGE

2

3      THE UNDERSIGNED PARTY enters into this Consent Decree in
the matter of United States v. _____, et. al, relating to the
4    Operating Industries, Inc. (OII) Superfund Site.

5    SETTLING PARTY'S NAME:   __YRC INC.__

SETTLING ON BEHALF OF THE FOLLOWING GENERATORS APPEARING IN
6    EPA'S VOLUMETRIC DATABASE:

7        Roadway Express & Viking Freight
         Western Gillette
8        Cantlay and Tanzola
         Viking Freight
9

10   SELECT ONE SETTLEMENT OPTION:              Settlement Payment

11           ☑   Cash-1 Option                    $335,598
             ☐   Cash-2 Option                    $285,405

12

13   2/23/09
     _____          _____
         Date                        Signature
14
     Joseph J. Pec                Assistant Secretary
15   _____          _____
     PRINTED NAME OF SIGNATORY    TITLE OF SIGNATORY
16   10990 Roe Avenue             (913) 344-5405
     _____          _____
     ADDRESS                      TELEPHONE NUMBER
17   Overland Park, Kansas, 66211  (913) 696-6112
     _____          _____
     CITY, STATE, ZIP CODE        FACSIMILE NUMBER
18   joseph.pec@yrcw.com
     _____
19   EMAIL ADDRESS

20       Agent* Authorized to Accept Service and Future Notices on
     Behalf of Above-signed Party [Please Type or Print Clearly]:
21
     Name and/or Title:   Attorney
22
     Address:   10990 Roe Avenue
23               Overland Park, Kansas  66211
24   Telephone Number:   (913) 696-6175
25   Facsimile Number:   (913) 696-6113
26   Email Address:   joseph.pec@yrcw.com

27   * The agent may be changed by written notice to EPA, the Court, and the
     parties listed in Section XX, Form of Notice.
28

     **OII Site: Ninth Partial Consent Decree**            **Page 72**

## NINTH PARTIAL CONSENT DECREE

### APPENDIX A

### TABLE OF CD-9 DEFENDANTS

| Company Name (#) [1] | Cash Defendant Type (Cash-1, Cash-1/R, Cash-2, Cash-2/R) | Applicable Covenants | | | Settlement Payment |
|---|---|---|---|---|---|
| | | Covenants for the Cash-1 and Cash-1/R Defendants (Section XII) | Covenants for the Cash-2 and Cash-2/R Defendants (Section XIII) | Covenant for Matters Addressed in the First and Third Decrees (Section XIV) | |
| **Ameron International Corporation** | | | | | $993,688 |
| Ameron Steel (156) | Cash-1/R | XXX | | XXX | |
| Ameron, Inc. | Cash-1/R | XXX | | XXX | |
| Ameron Pipe | Cash-1/R | XXX | | XXX | |
| Ameron Steel & Wire | Cash-1/R | XXX | | XXX | |
| **B & C Plating Company [2]** | | | | | $250 |
| B & C Plating Company (127) | Cash-1 | XXX | | | |
| **California Dairies, Inc.** | | | | | $541,959 |
| California Milk Producers (98) | Cash-1 | XXX | | | |
| **Casex Co., a Partnership [2]** | | | | | $94,500 |
| Casex Oil (212) | Cash-2/R | | XXX | XXX | |
| **Energy Production & Sales Co. [2]** | | | | | $75,000 |
| Energy Production (242) | Cash-1/R | XXX | | XXX | |
| **Halliburton Energy Services, Inc.** | | | | | $600,294 |
| Welex (2835) | Cash-2/R | | XXX | XXX | |
| IMCO Services (330) | Cash-2/R | | XXX | XXX | |
| Halliburton Services (703) | Cash-2/R | | XXX | XXX | |
| Masoneilan International, Inc. (313) | Cash-2/R | | XXX | XXX | |
| **International Extrusion Corporation** | | | | | $182,997 |
| International Extrusion (196) | Cash-2 | | XXX | | |
| **Jaybee Manufacturing Corporation [2]** | | | | | $500 |
| Jaybee Manufacturing (157) | Cash-1/R | XXX | | XXX | |
| **Luxfer, Inc.** | | | | | $409,520 |
| Luxfer USA (152) | Cash-1 | XXX | | | |
| Luxfer USA Limited | Cash-1 | XXX | | | |
| Luxfer, Inc. (152) | Cash-1 | XXX | | | |
| BA Holdings | Cash-1 | XXX | | | |
| Sundance Holdings | Cash-1 | XXX | | | |
| Luxfer Gas Cylinders (438), for Alcan Aluminum | Cash-1 | XXX | | | |

Appendix A, Ninth Partial Consent Decree, Table of Cash Defendants.

93

| Company Name (#) [1] | Cash Defendant Type (Cash-1, Cash-1/R, Cash-2, Cash-2/R) | Applicable Covenants | | | Settlement Payment |
|---|---|---|---|---|---|
| | | Covenants for the Cash-1 and Cash-1/R Defendants (Section XII) | Covenants for the Cash-2 and Cash-2/R Defendants (Section XIII) | Covenant for Matters Addressed in the First and Third Decrees (Section XIV) | |
| **Princess Cruises Limited** | | | | | $634,096 |
| Pacific Princess (258) | Cash-1/R | XXX | | XXX | |
| William Diamond (365) | Cash-1/R | XXX | | XXX | |
| **Thompson Drilling Company [2]** | | | | | $500 |
| Thompson Drilling (137) | Cash-1/R | XXX | | XXX | |
| **YRC, Inc.** | | | | | $335,598 |
| Roadway Express & Viking Freight (271) | Cash-1 | XXX | | | |
| Western Gillette (556) | Cash-1/R | XXX | | XXX | |
| Cantlay and Tanzola (2625) | Cash-1/R | XXX | | XXX | |
| Viking Freight (3928) | Cash-1 | XXX | | | |

Footnote 1: The parenthetical number following a generator's name indicates the identification tracking number in EPA's OII PRP database.

Footnote 2: The settlement payment shown for this company reflects EPA's determination that a reduction of the payment is justified based upon the company's financial condition.

Appendix A, Ninth Partial Consent Decree, Table of Cash Defendants.

94

CD-9
**APPENDIX B**
**NINTH PARTIAL CONSENT DECREE**
**VOLUMETRIC LIST AND PREVIOUS SETTLEMENT STATUS**

| Name of Settling Party / Generator Name | Volume | CD1 | CD2 | CD3 | CD4 | CD5 | CD8 |
|---|---|---|---|---|---|---|---|
| **Ameron International Corporation** | | | | | | | |
| Ameron Steel | 233,480 | Recl | Recl | | | | |
| Total Volume | 233,480 | | | | | | |
| **B & C Plating Company** | | | | | | | |
| B & C Plating Company | 309,960 | Recl | Cash | Cash | | | |
| Total Volume | 309,960 | | | | | | |
| **California Dairies, Inc.** | | | | | | | |
| California Milk Producers | 419,474 | Recl | Recl | | | Cash | |
| Total Volume | 419,474 | | | | | | |
| **Casex Co., a Partnership** | | | | | | | |
| Casex Oil | 160,650 | | | | | | |
| Total Volume | 160,650 | | | | | | |
| **Energy Production & Sales Co.** | | | | | | | |
| Energy Production | 137,760 | | Recl | | | Recl | |
| Total Volume | 137,760 | | | | | | |
| **Halliburton Energy Services, Inc.** | | | | | | | |
| Welex | 4,200 | | | | | | |
| IMCO Services | 88,200 | | | | | | |
| Halliburton Services | 28,140 | | | | | | |
| Masoneilan International, Inc. | 82,950 | | | | | | |
| Total Volume | 203,490 | | | | | | |
| **International Extrusion Corporation** | | | | | | | |
| International Extrusion | 185,220 | Cash | | Cash | | | |
| Total Volume | 185,220 | | | | | | |
| **Jaybee Manufacturing Corporation** | | | | | | | |
| Jaybee Manufacturing | 246,511 | Work | | Recl | | Recl | |
| Total Volume | 246,511 | | | | | | |
| **Luxfer, Inc.** | | | | | | | |
| Luxfer USA | 252,091 | Cash | | Cash | | | Recl |
| Total Volume | 252,091 | | | | | | |
| **Princess Cruises Limited** | | | | | | | |
| Pacific Princess | 126,630 | | | | | | |
| William Diamond | 77,490 | | | | | | |
| Total Volume | 204,120 | | | | | | |
| **Thompson Drilling Company** | | | | | | | |
| Thompson Drilling | 280,560 | | Recl | | | Recl | Recl |
| Total Volume | 280,560 | | | | | | |
| **YRC, Inc.** | | | | | | | |
| Roadway Express & Viking Freight | 119,400 | | | | | Cash | Recl |
| Western Gillette | 43,050 | | | | | | |
| Cantlay and Tanzola | 2,460 | | | | | | |
| Viking Freight | 200 | | | | | Cash | |
| Total Volume | 165,110 | | | | | | |
| | | | | | | | |
| **Definitions:** | | | | | | | |
| Recl | The recalcitrant (recl) party was offered but failed to settle for the matters addressed in the CD indicated. | | | | | | |
| Cash | The cash party elected to pay cash to settle for the matters addressed in the CD indicated, and has settled for the subject matter of all prior settlements. | | | | | | |
| Work | The work party elected to perform cleanup work on the matters addressed in the CD indicated. | | | | | | |

NINTH PARTIAL CONSENT DECREE

APPENDIX C

CONTAMINANTS LIST

| Chemical Name | 4,4'-DDE | Carbon tetrachloride |
|---|---|---|
| **Organic Constituents** | 4,4'-DDT | Chlordane |
| 1,1,1,2-Tetrachloroethane | 4-Methyl-2-pentanone | Chlordane, gamma- |
| 1,1,1-Trichloroethane | 4-Methylphenol | Chlorobenzene |
| 1,1,2-Trichloroethane | 4-Nitroaniline | Chloroethane |
| 1,1-Dichloroethane | Acenaphthene | Chloroform |
| 1,1-Dichloroethylene | Acetone | Chloromethane |
| 1,2,4-Trichlorobenzene | Aldrin | Chrysene |
| 1,2-Dibromoethane | Anthracene | cis-1,2-Dichloroethylene |
| 1,2-Dichlorobenzene | Benzene | cis-1,3-Dichloropropene |
| 1,2-Dichloroethane | Benzo(a)anthracene | Di-n-butylphthalate |
| 1,2-Dichloroethylene (Total) | Benzo(a)pyrene | Di-n-octylphthalate |
| 1,2-Dichloroethylene, trans- | Benzo(b)fluoranthene | Dibenzofuran |
| 1,2-Dichloropropane | Benzo(g,h,i)perylene | Dibromochloromethane |
| 1,3-Dichlorobenzene | Benzo(k)fluoranthene | Dichlorodifluoromethane |
| 1,3-Dichloropropene, trans- | Benzoic acid | Dieldrin |
| 1,4-Chlorotoluene | Benzyl alcohol | Diethylphthalate |
| 1,4-Dichlorobenzene | Benzyl chloride | Dimethylphthalate |
| 1,4-Dioxane | Beta-BHC | Endosulfan I |
| 2,4-Dimethylphenol | BHC, alpha- | Endosulfan II |
| 2-Butanone | BHC, delta- | Endosulfan sulfate |
| 2-Hexanone | BHC, gamma- (Lindane) | Endrin |
| 2-Methylnaphthalene | bis(2-Ethylhexyl)phthalate | Endrin aldehyde |
| 2-Methylphenol | Butylbenzylphthalate | Ethylbenzene |
| 3,3'-Dichlorobenzidine | Carbazole | Fluoranthene |
| 4,4'-DDD | Carbon disulfide | Fluorene |

96

| | |
|---|---|
| Heptachlor | |
| Heptachlor epoxide | |
| Hexachlorobutadiene | |
| Isophorone | |
| Methoxychlor | |
| Methylene chloride | |
| N-Nitrosodimethylamine | |
| N-Nitrosodiphenylamine | |
| Naphthalene | |
| Pentachlorophenol | |
| Phenanthrene | |
| Phenol | |
| Purgeable organic halogens | |
| Pyrene | |
| Styrene | |
| Tetrachloroethylene | |
| Toluene | |
| Total Organic halogens | |
| Trichloroethylene | |
| Trichlorofluoromethane (Freon 11) | |
| Vinyl actetate | |
| Vinyl chloride | |
| Xylene, m,p,- | |
| Xylene, m- | |
| Xylene, o- | |
| Xylenes, p- | |
| Xylenes, total- | |

| Inorganic Constituents |
|---|
| Aluminum |
| Ammonia nitrogen (as N) |
| Antimony |
| Arsenic |
| Barium |
| Beryllium |
| Cadmium |
| Calcium |
| Chloride |
| Chromium (Total) |
| Cobalt |
| Copper |
| Cyanide |
| Iron |
| Lead |
| Magnesium |
| Manganese |
| Mercury |
| Nickel |
| Nitrate |
| Nitrite (as N) |
| Potassium |
| Selenium |
| Silver |
| Sodium |
| Sulfate |
| Sulfide |
| Thallium |
| Tin |

| | |
|---|---|
| Vanadium | |
| Zinc | |

97